646 So.2d 925 (1994)
STATE of Louisiana
v.
Tyrone BUTLER.
No. KA 93 1317.
Court of Appeal of Louisiana, First Circuit.
October 7, 1994.
Rehearing Denied January 18, 1995.
*926 Doug Moreau, Gwendolyn K. Brown, Dist. Attorney's Office, Baton Rouge, for appellee State.
Lennie F. Perez, Baton Rouge, for defendant/appellant Tyrone Butler.
Before CRAIN, FOIL and WHIPPLE, JJ.
WHIPPLE, Judge.
Tyrone Butler (defendant), Tyrone Gaines and Carlene Smith were jointly charged by bill of information with one count of possession of over 400 grams of cocaine, in violation of LSA-R.S. 40:964 and 40:967; and one *927 count of conspiracy to distribute cocaine, in violation of LSA-R.S. 14:24, 40:979 and 40:967. Defendant was tried by a jury, which convicted him as charged.[1] The trial court imposed a sentence of twenty-seven years at hard labor, with credit for time served, for the conviction of possession of cocaine; and the court further ordered that fifteen years of this sentence was to be served without benefit of probation, parole or suspension of sentence. For the conviction of conspiracy to distribute cocaine, the court imposed a sentence of ten years at hard labor, with credit for time served; and the court ordered this sentence to be served concurrently with the sentence imposed for the conviction of possession of cocaine.
Defendant appealed, alleging twenty-one assignments of error. Assignment of error twenty-one, dealing with the suppression of physical evidence and testimony about that evidence, was specifically abandoned.

FACTS
Defendant was charged with the possession of approximately 1,000 grams of cocaine. The cocaine was sent to Baton Rouge, Louisiana, from Compton, California, through the United Parcel Service (UPS). Jerry Domingue, a UPS employee in the loss prevention department, testified that he was called to Port Allen from Lafayette, Louisiana, to inspect a package that had been shipped without a complete address. The package was addressed to a large apartment complex and could not be delivered without an apartment number.
By the time Domingue first saw it, the package already had been opened by UPS employees seeking a complete address. Inside the parcel was a laundry detergent box containing a bundle wrapped in electrical tape. Because of his prior experience with contraband sent in similar packaging, Domingue was suspicious of the contents, and he called the narcotics division of the Baton Rouge City Police to investigate. Detective Frank Caruso went to the UPS office and performed a field test on the contents of the box, which indicated that the package contained cocaine.
At approximately 11:00 o'clock a.m., a woman called the UPS office asking about the package; and she was told that the air freight deliveries had been delayed. The caller refused to give her name. Approximately forty-five minutes after the first telephone call, the UPS office received a second call inquiring about the package. This caller was a man, who also would not leave his name. However, he was able to provide the tracking number for the package. When initially asked for identifying information, the caller stated he was unable to hear the conversation and hung up. He called back approximately five minutes later, and he provided an apartment number for the delivery during this call.
Detective Caruso, dressed in a UPS uniform, delivered the package in accordance with the caller's direction; and a male in the apartment signed for the package as "Todd Bell." After transfer of the package, Caruso arrested the person who accepted delivery, later identified as Tyrone Gaines.
After his arrest, Gaines stated that he had been dropped off at the apartment by a black male known as Tyrone or "T". "T" and a black female whom he did not know picked him up in the Gus Young Avenue area in north Baton Rouge, in a small white car apparently manufactured by either Toyota or Nissan. "T" asked him to pick up a package to be delivered to the apartment and gave him $30.00 to $40.00, in case there were unexpected expenses for the delivery. "T" told him that he would get $300.00 to $400.00 for accepting the package.
Domingue had accompanied Caruso to the complex and stayed in the delivery van while Detective Caruso went to the apartment. From the van, he observed Carlene Smith, a UPS employee, talking to a detective in the parking lot. Smith asked Domingue for assistance, *928 and he recommended that she cooperate with the detective. Smith was brought to the apartment, where Gaines identified her as the woman who dropped him off at the apartment. Smith later stated that she had advised defendant how to trace the package.
Detective Don Stone identified defendant at the scene. Stone was conducting an undercover investigation in the Harrell's Ferry Road area, approximately one-half to three-fourths of a mile from the apartment complex where the cocaine was delivered. Stone noticed a dark purple Mustang with gold trim, which he described as a very "flashy" car of a type frequently associated with drug dealers. Although it apparently was not connected with his investigation, Stone followed the car and called for a check of the vehicle license plate number. The windows were deeply tinted, and Stone was unable to see the driver. However, the car eventually was parked in the parking lot of the apartment complex where Gaines awaited delivery of the package from UPS. The driver left the vehicle and walked toward the specific building in the complex where Gaines waited. At that time, Stone obtained a clear view of the driver; and he saw the driver again a few minutes later when the man walked away from the building. Stone identified defendant as the individual he saw in the parking lot.
The Mustang left the parking lot at a high rate of speed. As Stone left the parking lot, he saw the UPS truck with Det. Caruso and stopped to ask why Caruso was in the area. After describing defendant and the vehicle, Caruso and Stone decided that the driver possibly was connected with the transaction. However, despite an alert broadcast for the vehicle, defendant was not apprehended at that time. He was arrested approximately one month later and jointly charged with Carlene Smith and Tyrone Gaines.

ADMISSION OF EVIDENCE OVER DEFENSE OBJECTION
In defendant's first thirteen assignments of error, he contends the court erred in permitting the prosecutor to ignore rulings on evidentiary matters by repeating questions and attempting to introduce evidence after objections to the evidence had been sustained. Defendant combined all thirteen assignments of error into one argument, which essentially contains nothing more than a general restatement, in one sentence, of the designations of error. Accordingly, we find these assignments of error were not briefed on appeal in accordance with Uniform RulesCourts of Appeal, Rule 2-12.4, and thus are considered abandoned.

VIOLATION OF RIGHT TO CONFRONTATION
In assignments of error fourteen, fifteen and twenty, defendant claims the trial court abridged his right of confrontation by permitting the state to introduce post-arrest hearsay statements of his codefendants, Carlene Smith and Tyrone Gaines. Defendant claims the statements were admitted in violation of Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).
During the state's cross-examination of Alberto Gaines, the mother of Tyrone Gaines, the following exchange occurred:
Q. You and your son have discussed why he was arrested on May 15, 1991?
A. No more than what he told me. Just whathe was arrested for picking up a package for a guy.
Q. Did he tell you the person's name?
A. Yes, he did. I asked him who it was, and he said Tyrone Butler, but I never knew him.
Q. Did he tell you that anyone else was involved besides
[BY DEFENSE COUNSEL]: Your honor, I'm gonna object to this as hearsay. I was talking to my client. I missed something. I object to that as hearsay.
[BY THE PROSECUTOR]: Your honor, I'm asking the mother of the son who is a defendant, who had a conversation. That is hardly hearsay.
[BY DEFENSE COUNSEL]: He got (sic) a right to get on the stand under oath, your honor. This jury needs the facts under oath from the stand. He wasn't under oath when he talked [to] *929 his mother. Everybody lie (sic) to their mother.
[BY THE PROSECUTOR]: Am I missing something?
[BY THE COURT]: No comments, Mr. Grey. Overruled.
Defendant claims his constitutional rights to confront and cross-examine the witnesses against him were violated by this testimony. He submits that Gaines's statement was hearsay and that it was presumptively suspect as a statement by a non-testifying co-defendant. The state contends defendant should be procedurally barred from raising a Bruton claim because his objection to the trial court was based on a hearsay violation. The state further claims that the evidence was "cumulative, corroborative and insignificant in light of the overwhelming evidence of defendant's guilt" and that it should be considered reliable because it was against Gaines's own interests. Finally, the state claims that, even if the introduction of the testimony constituted error, any error should be considered harmless.
Hearsay evidence is testimony in court, or written evidence, of a statement made out of court, when the statement is being offered as an assertion to show the truth of matters asserted therein and thus rests for its value upon the credibility of the out-of-court asserter. State v. Martin, 356 So.2d 1370, 1373-1374 (La.1978); LSA-C.E. art. 801(C). One of the primary justifications for the exclusion of hearsay is that the adversary has no opportunity to cross-examine the absent declarant to test the accuracy and completeness of the testimony. The declarant also is not under oath at the time of the statement. Moreover, the confrontation clause of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him". U.S. Const. amend. VI. There is no opportunity for confrontation when an assertion by one party is presented through the testimony of another party. State v. Wille, 559 So.2d 1321, 1329 (La.1990), cert. denied, ___ U.S. ___, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992).
In Wille, the Louisiana Supreme Court noted as follows:
The relationship between the confrontation clause and hearsay evidence was discussed in California v. Green, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). The Court recognized that the reasons for excluding hearsay assertions were (1) to insure that the witness will make his assertions under oath, thus impressing him with the seriousness of the matter and subjecting untrue statements to a penalty for perjury; (2) to force the witness to submit to cross-examination, characterized as the "greatest legal engine ever invented for the discovery of truth"; (3) to permit the jury which decides the defendant's fate to observe the demeanor of the witness in making his statements, thus aiding the jury in assessing the witness' credibility. Id. at 158, 90 S.Ct. at 1935.
State v. Wille, 559 So.2d at 1329.
Thus, although the state argues that defendant's hearsay objection was insufficient to preserve his complaint to an abridgement of the rights of cross-examination and confrontation, a hearsay objection is fundamentally based on those rights. Accordingly, we reject the state's claim that the complaint was not preserved for review.
Citing State v. Ester, 458 So.2d 1357 (La. App. 2nd Cir.1984), writ denied, 464 So.2d 313 (La.1985), the state further claims that defendant's Bruton claim is not supported because that complaint "is grounded in an improper effort to equate the hearsay testimony of Ms. Gaines regarding [Tyrone] Gaines' [sic] admission ... to the admission of an out-of-court confession by a non-testifying defendant being jointly tried." The state also contends the statement at issue was not the product of police interrogation, and as a statement against Gaines's penal interest, is a clear exception to the hearsay exclusion rule.
The state apparently contends that only an admission of guilt that is the product of custodial interrogation should be excluded from the trial of a codefendant. While we recognize that Gaines's statement to his mother was not the product of police interrogation, nor is it an unambiguous admission that he knowingly engaged in criminal behavior, *930 it constitutes hearsay evidence to the effect that defendant was a principal in this offense.
In Ester, the statement was not the product of custodial interrogation. The codefendant who made the statement was not tried jointly with the defendant, and the statement itself was admissible under the coconspirator exception to the hearsay rule. Moreover, the statements bore "indicia of reliability" because they were against the declarant's penal interest. State v. Ester, 458 So.2d at 1368.
Herein, Gaines was a non-testifying codefendant jointly tried with defendant. Although the state argues that the statements should have been admissible as an exception to the hearsay exclusion because they were against Gaines's penal interest and he was an unavailable witness, as provided by LSA-C.E. art. 804(A) and (B)(3), the statements themselves bore no other indicia of reliability. In State v. Rushing, 464 So.2d 268, 274 (La.1985), cert. denied, 476 U.S. 1153, 106 S.Ct. 2258, 90 L.Ed.2d 703 (1986), the Court noted that "[t]he source of credibility for the out-of-court statement against the defendant's penal interest is the assumption that a person would not normally admit to the commission of a crime if not true." Unless the statement is truly against the maker's penal interest, its reliability is suspect. The statement at issue herein, to the effect that Gaines picked up a package for Tyrone Butler, is not a clear admission of guilt.
The state is correct in the assertion that, strictly speaking, this complaint does not raise a Bruton issue, which primarily is addressed to the need to sever trials of codefendants when one of the defendants has admitted his guilt and implicated the codefendant. However, as noted in Lee v. Illinois, 476 U.S. 530, 542-44, 106 S.Ct. 2056, 2063, 90 L.Ed.2d 514 (1986), "spill-over" prejudice is not the only concern raised by the admission of statements by a non-testifying codefendant. Therein, the Court stated as follows:
[I]n Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965), we reversed a conviction because a confession purportedly made by the defendant's accomplice was read to the jury by the prosecutor. Because the accomplice in that case, while called to the witness stand, invoked his privilege against self-incrimination and refused to answer questions put to him, we held that the defendant's "inability to cross-examine [the accomplice] as to the alleged confession plainly denied him the right of cross-examination secured by the Confrontation Clause." Id., at 419, 85 S.Ct., at 1077. This holding, on which the Court was unanimously agreed, was premised on the basic understanding that when one person accuses another of a crime under circumstances in which the declarant stands to gain by inculpating another, the accusation is presumptively suspect and must be subjected to the scrutiny of cross-examination.
Lee v. Illinois, 476 U.S. at 541, 106 S.Ct. at 2062. While the presumption that the evidence is unreliable may be rebutted if it is supported by a showing of "particularized guarantees of trustworthiness", Lee v. Illinois, 476 U.S. at 543, 106 S.Ct. at 2063, the mere fact that Gaines's statement could be construed as inculpating him also does not guarantee that the statement with regard to defendant was particularly trustworthy. Thus, we conclude that the court erred in overruling defendant's objection.
Nevertheless, the erroneous admission of hearsay evidence does not require a reversal of defendant's conviction if the error was harmless beyond a reasonable doubt. Reversal is mandated only when there is a reasonable possibility that the evidence might have contributed to the verdict. Chapman v. State of California, 386 U.S. 18, 23, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967); State v. Gibson, 391 So.2d 421, 426 (La.1980); Satterwhite v. Texas, 486 U.S. 249, 257, 108 S.Ct. 1792, 1797, 100 L.Ed.2d 284 (1988).
Confrontation errors are subject to a Chapman harmless error analysis. Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674 (1986). The correct inquiry is whether the reviewing court, assuming that the damaging potential of the cross-examination were fully realized, is nonetheless convinced that the error was harmless beyond a reasonable doubt. Delaware *931 v. Van Arsdall, 475 U.S. at 684, 106 S.Ct. at 1438. Factors to be considered by the reviewing court include:
[t]he importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.
Delaware v. Van Arsdall, 475 U.S. at 684, 106 S.Ct. at 1438.
Carlene Smith testified on behalf of the state. Although she repeatedly claimed that she did not remember specific incidents and was obviously hostile, Smith clearly testified that she helped defendant try to obtain the package.
Although Smith was on vacation the week of the incident, she entered the UPS office earlier in the morning of the transaction, ostensibly to find some insurance papers. She admitted that, at defendant's request, she tracked down the route driver who normally handled deliveries to the apartment complex and asked him about the package. She denied that she knew what was in the package or that she had gone to extraordinary lengths for defendant; she claimed she simply helped him out because she knew how to trace the package.
Smith told Butler that he needed the tracking numbers on the package in order to trace it, and she gave him permission to use her telephone to call the sender in California to obtain the numbers. Telephone records verified that a toll call was made from Smith's telephone number to Long Beach, California, at 12:28 o'clock p.m., approximately one and one-half hours before the delivery.
Smith was initially questioned in the parking lot of the apartment complex immediately after Gaines's arrest. As Detective Caruso changed out of the UPS uniform, Detective Rocky Ricks noticed a woman and a vehicle that matched the information Gaines had provided upon his arrest a few minutes earlier, and he stopped to question the driver, later identified as Carlene Smith. Gaines subsequently identified Smith as the woman who drove him to the apartment complex.
Accordingly, we find that the testimony by Gaines' mother as to her son's implication of defendant was clearly cumulative to and corroborative of the in-court testimony of Carlene Smith. While defendant claims that Mrs. Gaines's testimony was the only evidence linking him to the offense by someone other than Smith, who had good cause to attempt to inculpate defendant and thus exculpate herself, Smith was subject to full cross-examination by attorneys representing Tyrone Gaines and defendant. The erroneous admission of this testimony did not materially strengthen the state's case against defendant, and we conclude that the jury did not rely on it in determining defendant's guilt. Thus, we find no reversible error.

SUFFICIENCY OF THE EVIDENCE
In assignments of error sixteen, seventeen and eighteen, defendant contends the evidence is insufficient to support the conviction of conspiracy to distribute cocaine. Essentially, he contends that the state's evidence, at best, supported a verdict of "conspiracy to possess with intent to distribute" cocaine, as opposed to "conspiracy to distribute."
LSA-R.S. 14:26 defines conspiracy as follows:
A. Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy unless, in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.[2]
Thus, the crime of conspiracy is formed when an agreement to commit a crime is reached between two or more persons and an act is done in furtherance of the agreement. The overt act need not be unlawful; it can be any act, innocent in itself, accompanying or following *932 the agreement, which is done in furtherance of the conspiracy. State v. Richards, 426 So.2d 1314, 1316-17 (La.1982). LSA-R.S. 40:961(13) provides, in pertinent part, as follows:
"Distribute" means to deliver a controlled dangerous substance whether by physical delivery, administering, subterfuge, furnishing a prescription, or by filling, packaging, labeling or compounding the substance pursuant to the lawful order of a practitioner.
Defendant contends a legislative distinction exists between the offenses of distribution of a controlled dangerous substance and its possession with the intent to distribute. He further contends that "[t]here is no evidence in the record that Tyrone Butler entered into an agreement with anyone for the specific purpose of distributing, i.e. delivering, cocaine" and that the only object established by the agreement between defendant, Gaines and Smith was to obtain possession of the package.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. See LSA-C.Cr.P. art. 821; State v. Probst, 623 So.2d 79, 82 (La.App. 1st Cir.), writ denied, 629 So.2d 1167 (La.1993). The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in Louisiana Code of Criminal Procedure article 821 is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. State v. McLean, 525 So.2d 1251, 1255 (La.App. 1st Cir.), writ denied, 532 So.2d 130 (La.1988).
Detective Caruso testified that he had been involved in "hundreds and hundreds and hundreds" of cocaine arrests, but only ten to twenty of those arrests involved "major weight" transactions such as a kilogram of cocaine. He further testified without objection that the primary factor used to determine whether or not to charge a party with distribution (as opposed to simple possession) of a controlled dangerous substance was the weight of the contraband.
Moreover, although defendant apparently contends that the "distribute" element of the conspiracy charge exclusively related to the resale of the cocaine to outside prospective purchasers, we find the evidence clearly establishes that defendant intended for Tyrone Gaines to "distribute" or "deliver" the package to him. Carlene Smith testified that she helped defendant trace and attempt to attain possession of a package that contained cocaine. According to Gaines's statement at arrest, admitted without objection, defendant offered him $300.00 to $400.00 to sign for the package and, in turn, to deliver it to defendant. Defendant was in the parking lot where Gaines signed for delivery of the package during or immediately after that transaction, and was seen walking to the building where Gaines was to obtain the package.
Accordingly, we find the evidence is sufficient to establish that defendant entered into a conspiracy to distribute cocaine and acted toward furtherance of that object. These assignments of error have no merit.

EXCESSIVE SENTENCE
In assignment of error number nineteen, defendant contends his sentence for possession of cocaine in excess of 400 grams is excessive. The court ordered defendant to serve twenty-seven years at hard labor, with fifteen years of the sentence to be served without parole.[3]
Possession of cocaine in excess of 400 grams is punishable by a term of imprisonment of not less than fifteen years nor more than thirty years and a fine of not less than $250,000.00 nor more than $600,000.00. LSA-R.S. 40:967(F)(1)(c). A defendant sentenced under this provision is not eligible for probation or parole prior to serving the minimum sentence. LSA-R.S. 40:967(G).
In imposing the sentence of twenty-seven years at hard labor, the court noted the *933 following factors: 1) defendant had no prior convictions; and 2) the jury concluded defendant was guilty of a very serious offense. The court particularly noted that the conviction was by a jury and that the jury considered defendant to be a "big time" drug dealer. The court then stated as follows:
[Y]our lawyers will explain to you the impact of the sentence you're about to get. The difference between the mandatory minimum and the sentence you're going to get is about less than two years additional time served, if you ... get benefit of the good time by being a good prisoner. In other words, if you got the minimum, you would serve seven and a half. But if you take advantage of everything you have available to you, you will only serve nine years, by our calculations.
LSA-R.S. 15:571.3 precludes the diminution of sentence for good behavior for persons convicted of a violation of the Louisiana Controlled Dangerous Substances Law which is a felony. LSA-R.S. 15:571.3(C)(1)(q).[4] Thus, the trial court explicitly based the sentence herein on the incorrect impression that defendant could be eligible for good time release after serving one-third of the sentence.
A violation of due process occurs if the trial court imposes a sentence in ignorance of its own sentencing discretion. Hicks v. Oklahoma, 447 U.S. 343, 346, 100 S.Ct. 2227, 2229, 65 L.Ed.2d 175 (1980). See also State v. Hopkins, 367 So.2d 346, 347 (La.1979), wherein the Louisiana Supreme Court recognized that error occurs if the sentencing court misreads the sentencing parameters.
This Court previously has determined that the appropriate remedy when the court incorrectly calculated the sentencing range is for the reviewing court to vacate the sentence and remand for resentencing. State v. Howard, 517 So.2d 266, 271 (La.App. 1st Cir.1987). Accordingly, we vacate the sentence herein imposed for the conviction of possession of cocaine in excess of 400 grams and remand for resentencing.[5]
CONVICTIONS AFFIRMED; SENTENCE FOR CONSPIRACY TO DISTRIBUTE COCAINE AFFIRMED; SENTENCE FOR CONVICTION OF POSSESSION OF COCAINE IN EXCESS OF 400 GRAMS VACATED AND REMANDED FOR RESENTENCING.
NOTES
[1] Tyrone Gaines was tried with defendant and was acquitted of both charges. The district court granted a motion to suppress physical evidence as to Carlene Smith, and this Court denied the state's writ application. Although the state contends this Court ruled that charges against her could not be pursued, the actual ruling of this Court was narrow and affected only the admissibility of specific evidence.
[2] The attempt or conspiracy to commit any Title 40 offense also is prohibited by LSA-R.S. 40:979.
[3] Although defendant argues in brief that the entire sentence of twenty-seven years was to be served without benefit of parole, we note that the court actually denied benefit of parole on only fifteen years of the sentence.
[4] LSA-R.S. 40:961, et seq. was adopted as the "Uniform Controlled Dangerous Substances Law," rather than the "Louisiana Controlled Dangerous Substances Law." See LSA-R.S. 40:995. However, by reference to the Uniform Controlled Dangerous Substances Law in footnote two of LSA-R.S. 15:571.3(C)(1)(q), the Legislature indicated that the Louisiana Controlled Dangerous Substances Law and the Uniform Controlled Dangerous Substances law adopted in Title 40 are interchangeable for purposes of this statute.
[5] We note that § 311 of the Louisiana Felony Sentencing Guidelines specifically provides that good time and parole eligibility should not be considered as sentencing factors.