674 So.2d 380 (1996)
STATE of Louisiana, Plaintiff-Appellee,
v.
Mark Allen HATTAWAY, Defendant-Appellant.
No. 28060-KA.
Court of Appeal of Louisiana, Second Circuit.
May 8, 1996.
Opinion Denying Rehearing June 20, 1996.
*384 TEAT and AVERY by Jimmy C. Teat, Jonesboro, for Defendant-Appellant.
Richard Ieyoub, Attorney General, Kathleen E. Petersen and Donald A. Rowan, Assistant Attorney Generals, for Plaintiff-Appellee.
Before NORRIS, HIGHTOWER and WILLIAMS, JJ.
NORRIS, Judge.
After the Supreme Court reversed his first degree murder conviction and death sentence and remanded the case,[1] Mark Hattaway was charged by amended indictment with, and ultimately convicted of, second degree murder. La.R.S. 14:30.1. The trial court imposed the mandatory sentence of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. Hattaway appeals, urging 48 assignments of error.[2] For the following reasons, we affirm.

Factual history
In late November 1988 Raymond Heck, the president and general manager of Heck Industries, Inc., sent employee David Slade to Atlanta, Louisiana, just outside of Winnfield in Winn Parish. A temporary concrete plant had been established at this site to facilitate construction of a prison. Slade was to replace David Anglin, who had been living in Heck's on-site trailer with Hattaway's girlfriend, Patsy Admire, against company policy. Mr. Heck testified that he last spoke to Slade on Friday, December 2 around 4:30 or 5:00 p.m. He made several unsuccessful attempts to contact Slade later that evening and on Saturday. On Saturday, Slade's wife reported him missing, and the police began investigating his disappearance. That same day, an area hunter discovered Slade's unlocked company truck with the keys still in the ignition about 1½ miles from the trailer. The police organized a search party and on Sunday, Slade's dead body was found in a nearby wooded area. He had been shot five times in the head.
Deputy Robert Corbello, an investigator for the Winn Parish Sheriff's Department, immediately began interviewing neighborhood residents. He learned that Patsy Admire had been living at the Heck trailer with David Anglin and had been to the trailer on Friday, December 2. He subsequently interviewed Admire, her brother, Terry Blake, her sister Carla Whatley, and defendant, Hattaway, on Sunday, December 4.
The next day, Admire and Blake brought one gun apiece to the police; Admire turned in a Titan .25 caliber weapon and Blake, an H & R .22 caliber. Ballistics later confirmed that the .22 was the murder weapon. Police discovered that Blake kept the gun under the seat in his truck, and that Admire and Hattaway had borrowed the truck on the night of *385 Friday, December 2. After several interviews with Hattaway, he was eventually arrested on February 19, 1989.
Upon remand of the case from the Supreme Court, Hattaway was charged by amended indictment with second degree murder. In March 1994, the jury unanimously found him guilty as charged.

Assignments Nos. 1-3
By these assignments, Hattaway urges the court erred in denying his challenges for cause as to three jurors, Ms. Willie Doherty, Mr. Jesse Brewer, and Ms. Billie B. Jones.
To preserve the issue for appeal, the defendant must object to the court's ruling denying the challenge for cause. La. C.Cr.P. art. 800 A. If the defendant has exhausted all of his peremptory challenges, as in this case, prejudice is presumed and he need only show that the trial court erred in denying the challenge for cause. State v. Robertson, 92-2660 (La. 1/14/94), 630 So.2d 1278; State v. Fairley, 25,951 (La.App. 2d Cir. 5/4/94), 645 So.2d 213 writ denied 94-2909 (La. 3/24/95), 651 So.2d 287. The trial court is vested with broad discretion in ruling on a challenge for cause; such rulings will be disturbed only when review of the entire voir dire reveals an abuse of discretion. State v. Robertson, supra; State v. Plater, 26,252 (La. App. 2d Cir. 9/21/94), 643 So.2d 313, writ denied 94-2608 (La. 2/3/95), 649 So.2d 402. "A refusal by a trial judge to excuse a prospective juror on the ground he is not impartial is not an abuse of discretion where, after further inquiry or instruction (frequently called `rehabilitation'), the potential juror has demonstrated a willingness and ability to decide the case impartially according to the law and the evidence." State v. Robertson, supra at 1281.
Hattaway objected to each denial, thereby preserving the issue for appeal. La. C.Cr.P. art. 800 A. Regarding Ms. Doherty, he points to the following colloquy:
Q. Ms. Doherty, you have heard me talk about the Judge and the potential jurors about the constitutional rights that the defendant has and one of them is that he does not have to testify. You understand that?
A. Yes, sir.
Q. If Mr. Hattaway chose not to testify, whether it be his choice or mine, as his attorney or a joint choice between the two of us. Would you hold that against him?
A. I would not hold it against him but, [sic] I would like to hear his testimony. But, I would not hold it against him if he chose not to because it is his constitutional right.
Q. But, it is your testimony that you would like to hear it. You would like for him to, but you wouldn't hold it against him.
A. Right.
Q. You also understand that actually the defendant in this case does not have to put on any evidence.
A. I understand.
Q. Would you hold that against him if we didn't put on any evidence?
A. No.
R.p. 1041.
After the denial of his challenge for cause, Hattaway accepted her as a juror.
Despite the comment that she would like to hear Hattaway's testimony, Ms. Doherty firmly acknowledged that she understood and could accept Hattaway's right not to testify. She consistently stated that she would not hold this against him. She further indicated she understood that a defendant need not submit any evidence and that she would not hold this against him. We find no error in the court's refusal to sustain the challenge for cause as to Ms. Doherty.
Hattaway challenged Mr. Brewer for cause because he expressed concern for his convenience store, privately owned and operated by him and his wife. Mr. Brewer indicated that he needed to be there, and would be worried and thinking about his business during the trial. Mr. Brewer admitted it could cause him to miss something said or evidence presented. R.p. 1089. However, when later asked by the state whether he could concentrate on the case despite his concern for the business, he stated "I am sure I could. I would be thinking about something else too." R.p. 1091. The state *386 commented that it was human nature to have other thoughts, but asked if he could listen to the evidence and render a decision. Mr. Brewer answered, "I sure could." Id. Upon the refusal to grant his challenge for cause, Hattaway excused Mr. Brewer peremptorily.
Despite Mr. Brewer's admission of concern for his business, he stated he would nonetheless be able to concentrate on the trial, consider the evidence presented and render a decision. On this record, the trial court did not abuse its discretion in denying the challenge for cause. See State v. Lindsey, 543 So.2d 886 (La.1989), cert. denied 494 U.S. 1074, 110 S.Ct. 1796, 108 L.Ed.2d 798 (1990), reh'g denied 495 U.S. 966, 110 S.Ct. 2579, 109 L.Ed.2d 761 (1990).
Finally, Hattaway urges the court erred in refusing to sustain his challenge for cause as to Ms. Jones, who expressed concern over not being with her sick daughter if a problem arose. Ms. Jones explained that her daughter lived alone and has had this "condition" for several years. Ms. Jones stated she does not "take care of her," but "helps her" when any problems arise. R.p. 1236. She stated that if something happened to her daughter she would feel like she had to go. When asked by the Court if her daughter's condition was such that she would be unable to devote her attention to the trial even if no problem occurred, Ms. Jones said, "No. No. I live with that. You know. I mean ... You never know. You know ... I mean it has been a month or so since she has had any problems. It could happen tomorrow or it could be several months." R.pp. 1238-1239. The trial court denied Hattaway's challenge for cause because Ms. Jones had indicated she would not be distracted; in the event she was unable to serve, an alternate would be available. Hattaway ultimately accepted her as a juror.
Ms. Jones expressed concern in being available to tend to her daughter, should the need arise. She plainly stated, however, that this concern would not divert her attention from the instant trial. Ms. Jones indicated that she would be able to focus on the trial, and render a fair and impartial decision based on the evidence presented. We find no error in the trial court's denying the challenge for cause as to Ms. Jones.

Assignment No. 4
Hattaway urges the trial court erred in granting the state's challenge for cause as to Ms. Linda Dunn. Though Ms. Dunn stated she had difficulty judging others, Hattaway contends she was rehabilitated.
La.C.Cr.P. art. 800 B provides:
The erroneous allowance to the state of a challenge for cause does not afford the defendant a ground for complaint, unless the effect of such ruling is the exercise by the state of more peremptory challenges than it is entitled to by law.
In the instant case, the court minutes reveal that the state exercised only 7 of its 12 peremptory challenges. Thus, Hattaway has no grounds to complain of the alleged erroneous ruling. See State v. Lott, 574 So.2d 417 (La.App. 2d Cir.), writ denied 580 So.2d 666 (1991). This assignment does not present reversible error.

Assignment Nos. 5, 17
By these assignments, Hattaway contests the denial of his motions for a mistrial based on (1) prospective juror, Ms. Carolyn Smiley's, remark in front of the venire that Hattaway was being retried, and (2) prospective juror, Mr. Gordon Peter's, failure to disclose that he had been a prospective juror in Hattaway's first trial.
La.C.Cr.P. art. 775 provides for a mistrial when:
(1) The defendant consents thereto;
(2) The jury is unable to agree upon a verdict;
(3) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law;
(4) The court finds that the defendant does not have the mental capacity to proceed;
(5) It is physically impossible to proceed with the trial in conformity with law; or
(6) False statements of a juror on voir dire prevent a fair trial. *387 Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.
A mistrial is a drastic remedy to be invoked only when the defendant suffers such substantial prejudice that he is deprived of any reasonable expectation of a fair trial. State v. Sanford, 27,268 (La.App. 2d Cir. 8/23/95), 660 So.2d 555, writ denied 95-2570 (La. 2/9/96), 667 So.2d 527; State v. Hooker, 623 So.2d 178 (La.App. 2d Cir.1993). The decision whether or not to grant a mistrial lies within the sound discretion of the trial court, and will not be disturbed absent a clear abuse of that discretion. State v. Sanford, supra; State v. Stills, 600 So.2d 134 (La.App. 2d Cir.1992).
In the first instance, Hattaway moved for a mistrial under art. 775, urging it was impossible to get a fair trial after Ms. Smiley's remark in front of other prospective jurors that she had read the day before in the Alexandria Town Talk about the case "coming back for a re-trial." R.p. 1345. Outside of the presence of the other prospective jurors, she said she also knew from the article that he had been convicted and had appealed, but that the information would not influence her decision. In its discretion, the trial court denied the motion for a mistrial. It did agree, however, to allow defense counsel to question the jurors, once seated, about the article to which Ms. Smiley had referred. When questioned, however, none indicated knowledge of the article. The court also asked if they had "heard anything either in this courtroom or outside that would affect either your ... responses that you gave earlier to the questioning by the attorneys or your ability to sit fairly and impartially?" None responded. Upon selection of the alternate jurors, Hattaway reurged the motion for a mistrial; it was again denied.
Hattaway argues that only a mistrial could have remedied the situation as all the prospective jurors were present for Ms. Smiley's comment. In support, he cites State v. Lindsey, supra, wherein a prospective juror commented, "Excuse me. How could he be innocent if the State has tried him already?" In Lindsey, four other prospective jurors heard the comment, and the trial court dismissed them on defendant's motion for cause. The Supreme Court rejected Lindsey's argument that due to potential contamination, the trial court should have dismissed the entire 50-person venire taken from the jury pool. In the instant case, however, Ms. Smiley merely mentioned a retrial; she made no reference to the previous conviction or death sentence. Further, Hattaway had the opportunity to, and did in fact, question all remaining prospective jurors about their knowledge of the facts of the case, and whether they had formed an opinion as to guilt or innocence. The court also ensured that the jurors had heard nothing inside or outside the courtroom that had affected their ability to serve fairly and impartially. In brief, Hattaway states that the court did not even admonish the prospective jurors. However, an admonition is only available upon request; defendant made no such request, and in fact, acknowledged in brief that an admonition would have only served to focus more attention on the comment. La.C.Cr.P. art. 771. Under the circumstances, we find no error in the trial court's denying the motion for mistrial.
Regarding Mr. Gordon Peters, Hattaway contends the court erred in denying his motion for a mistrial under art. 775(6) because Mr. Peters allegedly failed to disclose that he had been a prospective juror in the first trial. In denying the motion, the court noted that Mr. Peters was never asked this question. Further, Mr. Peters had indicated that nothing prevented him from being fair and impartial. We agree. First, Hattaway's claim is tenuous at bestthere is no evidence whatsoever to suggest that Mr. Peters was, in fact, a prospective juror in the first trial, and thus made a false statement on voir dire. Mr. Peters, himself, was never questioned about this. Cf. State v. Powell, 598 So.2d 454, 462 (La.App. 2d Cir.), writ denied 605 So.2d 1189 (1992). Second, even if he had been a prospective juror in the first trial, Hattaway has failed to show that this prejudiced him. On voir dire, Mr. Peters stated that he did not know much about the case. *388 He indicated that he would be able to put aside anything he had heard and require the state to prove defendant's guilt, and that if forced to render a verdict before the presentation of any evidence, he would vote not guilty. These statements show that Mr. Peters could be a fair and impartial juror. See State v. McIntyre, 381 So.2d 408 (La.1980), cert. denied 449 U.S. 871, 101 S.Ct. 209, 66 L.Ed.2d 90 (1980). In sum, we find that the trial court did not err in denying Hattaway's motion for a mistrial.

Assignment No. 6
By this assignment, Hattaway contends the trial court erred in denying his motion for a change of venue due to the publicity surrounding the case. He urged this motion shortly before trial began, and in support submitted two articles which had recently appeared in the Alexandria Town Talk (D-1, D-2). These articles discussed jury selection, the second degree murder charge, and the penalty if convicted. Both noted that Hattaway's previous conviction for first degree murder and death sentence had been overturned by the Supreme Court.
La.C.Cr.P. art. 622 provides:
A change of venue shall be granted when the applicant proves that by reason of prejudice existing in the public mind or because of undue influence, or that for any other reason, a fair and impartial trial cannot be obtained in the parish where the prosecution is pending.
In deciding whether to grant a change of venue the court shall consider whether the prejudice, the influence, or the other reasons are such that they will affect the answers of jurors on the voir dire examination or the testimony of witnesses at the trial.
For a discussion of factors to be considered in determining whether a change of venue is appropriate, see State v. Bell, 315 So.2d 307 (La.1975); State v. Hall, 549 So.2d 373 (La. App. 2d Cir.1989), writ denied 556 So.2d 1259 (1990). On a motion for a change of venue, the defendant bears the burden of proving that he cannot obtain a fair trial in the parish where the case is pending. State v. McLemore, 26,106 (La.App. 2d Cir. 6/24/94), 640 So.2d 847, writ denied 94-1908 (La. 12/9/94), 647 So.2d 1107, cert. denied ___ U.S. ___, 115 S.Ct. 1974, 131 L.Ed.2d 863 (1995); State v. Henderson, 566 So.2d 1098 (La.App. 2d Cir.1990). A showing of mere knowledge by the public of the facts surrounding the offense will not suffice. State v. Giovanni, 409 So.2d 593 (La.1982). Rather, a defendant must show that such prejudice exists in the collective mind of the community that a fair trial is impossible. State v. Clark, 442 So.2d 1129 (La.1983); State v. McLemore, supra.
A trial court is vested with great discretion in ruling on a motion for change of venue. State v. Flood, 301 So.2d 637 (La. 1974), cert. denied 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975); State v. McLemore, supra. Nonetheless, a reviewing court may independently evaluate the record to determine whether the accused received a trial which was free and unfettered by outside influence. State v. Henderson, supra.
Almost all of the venire members were questioned on the issue of pretrial publicity. Admittedly, a majority of them knew something about the case. Most, however, had heard or read the information seven years ago when the incident occurred, and could hardly recall details of the case. Out of 71 prospective jurors only 7 stated that they had formed a fixed opinion as to Hattaway's guilt or innocence based on their prior knowledge of the case. The overwhelming majority of prospective jurors demonstrated only a cursory familiarity with the case, and denied that it would affect their ability to serve impartially. The two news articles submitted fell far short of proving that such prejudice existed in the collective mind of the community that Hattaway could not obtain a fair trial in Winn Parish. We have carefully reviewed both the voir dire and trial transcript; neither indicated bias against the defendant based on the publicity surrounding the case. Under the instant circumstances, we find that the trial court did not err in denying Hattaway's motion for a change of venue.

Assignments Nos. 14, 16, 30, 46
During the trial, Hattaway moved several times for a mistrial based on alleged *389 prejudicial publicity, offering in support various news articles which had appeared in the local newspaper (Ex. D-3 through 7). He argued that such articles, if read by the jurors, would make it impossible for him to obtain a fair trial. La.C.Cr.P. art. 775. The articles related information regarding jury selection, the facts and procedural history of the case, the number of votes needed to convict and the penalty for second degree murder. Several also recapped certain testimony presented at trial, some of which was not heard by the jury.
Hattaway urges on appeal it is "hard to believe" that not one of the jurors had read these articles, but as at trial, presented no evidence whatsoever to support this allegation. A general assertion such as this does not suffice to prove the requisite prejudice for a mistrial under La.C.Cr.P. art. 775; see also State v. Harris, 597 So.2d 163 (La.App. 2d Cir.1992). In State v. Harris, we rejected a similar argument (defendant asserted a "good chance" that some of the jurors had been exposed to certain news articles), and upheld the trial court's refusal to grant a new trial. Significantly, we also noted that the trial court's admonishment served to insulate the jury from media reports. State v. Harris, supra at 165.
In the instant case, the trial court cautioned the jury several times to avoid reading the newspaper and watching television newscasts. Hattaway failed to show in connection with any of the motions for mistrial that the jurors had disobeyed the admonishment. We thus conclude that the trial court did not abuse its discretion in denying these motions for mistrial.

Assignments Nos. 7, 10-12, 29, 39, 40-45
By these assignments, Hattaway contends that the trial court erred in allowing numerous exhibits and certain testimony into evidence over his objection to improper foundation and relevancy. His "briefing" of these assignments consisted of one paragraph, which merely urged that the State failed to lay the proper foundation. He failed to assert how or why the foundation for each exhibit was improper or the evidence was irrelevant. A mere restatement of an assignment of error in brief, as here, without argument or citation of authority, does not constitute briefing. We may therefore consider the assignments abandoned. State v. Vosloh, 387 So.2d 1174 (La.1980); State v. Toney, 26,711 (La.App. 2d Cir. 3/1/95), 651 So.2d 387; State v. Butler, 93-1317 (La.App. 1st Cir. 10/7/94), 646 So.2d 925; URCA Rule 2-12.4.

Assignment No. 8
By this assignment, Hattaway contends the trial court erred in not allowing him to question Raymond Heck on cross examination about the victim, Slade's, marriage. Specifically, defense counsel asked if Heck knew whether or not Slade had marital problems. The state's objection on relevancy grounds was sustained. On appeal, Hattaway argues that this denied him his constitutional right to confront witnesses under the Sixth Amendment and La. Const. art. 1, § 16.
Cross examination, the primary means by which the believability and truthfulness of a witness are tested, is the essential purpose of confrontation. Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973); State v. Mosby, 595 So.2d 1135 (La.1992); State v. Hillard, 398 So.2d 1057 (La.1981). However, its scope is not without limit. For evidence to be admissible, it must be relevant. Relevant evidence is that:
having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
La.C.E. art. 401.
The trial court has discretion to determine relevancy, and thus the scope and extent of cross examination. State v. Lard, 568 So.2d 629 (La.App. 2d Cir.1990). Its decision will not be disturbed absent an abuse of that discretion. Id.
By questioning Heck about disharmony in Slade's marriage, defense counsel sought to demonstrate that Slade's wife had a motive to kill him. However, it is too tenuous to infer from the mere fact of marital *390 problems that Mrs. Slade had a motive to kill her husband. Most importantly, there was no evidence at all to support the theory of marital discord, although such could easily have been presented by calling Mrs. Slade herself. In the absence of evidence of marital discord, the trial court did not abuse its discretion in limiting the cross examination of Heck. Cf. State v. Van Winkle, 94-0947 (La. 6/30/95), 658 So.2d 198.

Assignments Nos. 9, 22, 37
By these assignments, Hattaway urges the trial court erred in allowing Deputy Boddie Little, Deputy Robert Corbello and Rick Murphy to give hearsay testimony. In brief, however, he merely restates without argument that each instance is improper hearsay. These assignments are deemed abandoned. State v. Vosloh; State v. Butler; State v. Toney, supra.

Assignment No. 13
By this assignment, Hattaway urges the trial court erred in failing to sustain his objection to Deputy Paul Alsup's testimony as non-responsive, and that this error prejudiced him. Defense counsel asked Deputy Alsup to explain the next step in his investigative process. Deputy Alsup began to describe his receipt and transport of certain evidence. Upon review, we agree with the trial court that Deputy Alsup responded to the question posed. Even if the answer was not responsive, Hattaway has failed to state how it prejudiced him. We find no error in the trial court's ruling.

Assignment No. 15
Hattaway contends that the trial court erred in allowing Jerry Ogelsby to testify beyond the scope of his qualifications and expertise. Mr. Ogelsby, a registered radiologic-technologist at the Winn Parish Medical Center, took x-rays of Slade's body on December 4, 1988 and identified these at trial. Defense counsel objected when the state queried Mr. Ogelsby as to the substance of the x-rays, arguing that the state failed to lay a foundation as to his expertise in reading x-rays. The trial court agreed. The testimony further elicited established that Mr. Ogelsby had been an x-ray technician for 33 years, during which time he had studied many x-rays and was able to distinguish certain characteristics. On cross exam, however, Mr. Ogelsby admitted that only radiologists may give a formal interpretation. Defense counsel objected to the witness being qualified to read an x-ray, which the court sustained. After a bench conference, however, the trial court stated that the prosecution would be allowed to question Mr. Ogelsby, and noted defense counsel's objection for the record.
Mr. Ogelsby testified that the x-rays showed metallic fragments in the victim's skull. He then viewed Exhibit S-30 (bullet and fragments), which he testified appeared to contain configurations similar to that of the metallic fragments depicted in the x-rays.
Hattaway argues that the trial court permitted Mr. Ogelsby to give prejudicial testimony beyond his expertise. In reply, the state contends it never tendered Mr. Ogelsby as an expert and that his testimony fell within the scope of a lay witness. La.C.E. art. 701 provides:
If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are:
(1) Rationally based on the perception of the witness; and
(2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.
In State v. Larson, 579 So.2d 1050 (La.App. 3d Cir.1991), writ denied 588 So.2d 1110 (1991), the trial court allowed the lay testimony of Brian Foti, an emergency medical technician, as to the time of cardiac arrest despite the fact he was not tendered or accepted as an expert. In upholding the ruling, the court found that the state had laid the proper foundation to show that Foti had extensive training and had personally dealt with cases such as the one at issue in the past. See also State v. Hicks, 607 So.2d 937 (La.App. 2d Cir.1992); State v. Brown, 550 So.2d 922 (La.App. 2d Cir.1989), writ denied 556 So.2d 1259 (1990).
*391 Similarly, in the instant case the state first laid a foundation as to Mr. Ogelsby's training and experience. Mr. Ogelsby testified that based on his 33 years of experience in viewing x-rays, he was able to discern metallic fragments from bone. His testimony was limited to comparing the fragments depicted in the x-rays to the bullet fragments retrieved from the victim's skull. Mr. Ogelsby was entitled to testify as a layman to his observations after taking x-rays of the victim and any reasonable inferences from those observations. The opinions Mr. Ogelsby rendered were both rationally based on his perceptions and helpful to a clear understanding of his testimony. Finally, even if the testimony was improperly admitted, it was essentially cumulative considering the testimony of forensic pathologist Dr. Pyrra Grodman, and therefore harmless. State v. Hawkins, 633 So.2d 301 (La.App. 1st Cir.1993). We find no reversible error.

Assignments Nos. 18, 21, 24, 27
Though Hattaway combined these assigned errors with several others, the argument which followed entirely failed to address them. They are thus deemed abandoned. State v. Schwartz; State v. Kotwitz, supra.

Assignments Nos. 31, 32
By these assignments, Hattaway contends the trial court erred in permitting Marsheela Kay Flurry to refresh her memory by reading her prior statement, and in allowing the state to lead Ms. Flurry.
At the outset of questioning by the state, Ms. Flurry was unable to recall what time she received visitors on the night of December 2, 1988. When asked if anything would refresh her memory, she responded her statement would. The state first laid the proper foundation, eliciting from Ms. Flurry that she recalled making the statement and that it was accurate. After briefly reviewing it, she was then able to testify from memory. Such conduct was permissible. La.C.E. art. 612 B; State v. Garris, 603 So.2d 277 (La. App. 2d Cir.), writ denied 607 So.2d 564 (1992). We find no reversible error.
We next address Hattaway's argument that the state was improperly allowed to lead Ms. Flurry. Generally, leading questions should not be used on direct exam. La.C.E. art. 611 C. A leading question is one which suggests the answer the witness is to give. State v. White, 254 La. 389, 223 So.2d 843 (1969); State v. Lynch, 94-0543 (La.App. 1st Cir. 5/5/95), 655 So.2d 470, writ denied 95-1441 (La. 11/13/95), 662 So.2d 466. Here, the prosecutor inquired whether Ms. Flurry's memory was better at the time she gave the statement to Deputy Corbello in December 1988 or at the time of trial. The question at issue is not framed to elicit any particular answer. We therefore find no error.

Assignment No. 28
Hattaway contends the trial court erred in allowing the state over his objection to lead its witness, Carla Whatley. While attempting to establish a foundation to introduce into evidence letters Hattaway wrote to Ms. Whatley, the state pursued a line of questioning regarding precisely how the two corresponded.[3] Defense counsel raised an objection to leading, which was overruled.
As previously stated, leading questions are generally not appropriate on direct examination. La.C.E. art. 611 C. "Leading questions are not the type of prosecutorial error which diminish the reliability of a jury's verdict." State v. Felde, 422 So.2d 370, 385 (La.1982), cert. denied 461 U.S. 918, 103 S.Ct. 1903, 77 L.Ed.2d 290 (1983). The *392 use of leading questions is largely within the trial court's discretion, and only clear abuse which prejudices the defendant's rights will justify reversal of a conviction. State v. Felde, supra; State v. Essex, 618 So.2d 659 (La.App. 2d Cir.1993).
By the time the alleged leading occurred, Ms. Whatley had already testified that she and Hattaway wrote letters to one another. Therefore, though arguably leading, the state's questioning certainly did not prejudice Hattaway's rights and does not now justify reversal. We find no error in the trial court's ruling.

Assignments Nos. 20, 23, 25
By these assignments, Hattaway complains that the trial court erred in admitting into evidence photocopies of Hattaway's statements and Miranda rights forms rather than the originals.
Generally, a duplicate is admissible to the same extent as an original. La. C.E. art. 1003. Admission of a photocopy over objection is reversible only if the content of the copy does not accurately reflect that of the original. State v. Lewis, 567 So.2d 726 (La.App. 2d Cir.1990), writ denied 575 So.2d 364 (1991). Deputy Corbello identified the copies of the rights forms and statements. Deputy Alsup testified that at the state's request he had tried unsuccessfully to locate the original documents, thereby explaining the need for the copies. Hattaway has never maintained that the copies were not accurate reproductions, nor has he shown prejudice. Absent such a showing, we find no reversible error.

Assignment No. 35
Hattaway complains that the trial court erred in not allowing defense counsel to fully question Deidre Barrett regarding a prior statement she made to Deputy Corbello. On cross exam, defense counsel asked Ms. Barrett about a prior statement she made to Deputy Corbello concerning another person with information about Patsy Admire's involvement in the crime. The state objected to hearsay. The trial court asked defense counsel if he was offering it as a prior inconsistent statement. Defense counsel stated he was not and the court sustained the state's objection. Hattaway now contends this violated his constitutional right to confront the witness.
As previously stated, the right of confrontation encompasses cross examination, the scope of which, however, is not without limit. The trial court retains great discretion in determining the scope of cross exam, and its ruling will not be disturbed absent abuse of that discretion. State v. Lard, supra.
Contrary to Hattaway's assertion in brief, defense counsel admitted at trial that he was not offering the evidence as a prior inconsistent statement. The statement is not an exception to the hearsay rule. La.C.E. art. 801D(1)(a). Nor was it needed to refresh Ms. Barrett's memory. The trial court did not abuse its discretion in sustaining the state's objection.

Assignment No. 36
By this assignment, Hattaway urges the trial court erred in allowing forensic document examiner, Robert Foley, to testify and compare the signatures on the rights forms to the handwriting in certain letters over defense counsel's objection that the state failed to lay the proper foundation for the rights forms. The proper foundation had been laid, however, during Deputy Corbello's prior testimony, and the forms had been admitted. We find no reversible error.

Assignment No. 38
Hattaway contends the trial court erred in allowing Deputy Alsup to testify to Mrs. Slade's reaction upon being shown the clothing her husband was wearing when he was murdered. Over defense counsel's objection, the trial court allowed Deputy Alsup to relate only what he had observed. Deputy Alsup testified that she was "visibly upset." The trial court overruled defense counsel's objection and request to strike the answer.
Generally, a lay witness may only testify to facts within his knowledge and not to impressions or opinions; however, a witness is permitted to draw reasonable inferences based on personal observations. State *393 v. Alexander, 430 So.2d 621 (La.1983). Deputy Alsup's testimony as to Mrs. Slade's emotional state was a natural inference made as he observed her view and react to the deceased's clothing. In any event, even if inadmissible, the testimony is not so prejudicial as to justify reversal. This assignment is without merit.

Assignment No. 47
By this assignment, Hattaway argues that the trial court erred in failing to grant his motion for a mandatory mistrial based on comments the state made during closing arguments. La.C.Cr.P. art. 770(3). He urges that the state indirectly referred to his failure to testify or to present evidence in his defense:
... Patsy Admire. All right. I am not saying she is any better than he is. But, I will tell you something right now. If you fight on that one, then you lose. Everyone loses. Because Patsy Admire is not on trial here and you are not to consider anything about Patsy Admire. You know he has got the same power that everybody in this courtroom has. You all were all subpoenaed to come here. Weren't you? I was ordered to come here. He could have subpoenaed Patsy Admire to come in here, but he didn't do it. He didn't do it, ladies and gentlemen. He has the power to do that and he didn't do it. That is all I have got to tell you about that. Because, she is not on trial. He is. Don't consider what he wants you to. Don't bite on that book [sic] and say reasonable doubt. That is not a doubt.
R.p. 1952-1953.
Indirect references to the defendant's failure to testify constitute reversible error only when the prosecutor intended to emphasize defendant's failure to testify. State v. Jackson, 454 So.2d 116 (La.1984); State v. Wiley, 513 So.2d 849 (La.App. 2d Cir.1987), writ denied 522 So.2d 1092 (1988). Statements addressed to the defendant's theory of defense, not his election to testify, reflect no intent on the part of the prosecution to emphasize the defendant's failure to testify and do not fall within the art. 770(3) prohibition. State v. Banks, 627 So.2d 756 (La.App.2d Cir.1993).
Here, the prosecutor's remark is neither a direct nor indirect reference to Hattaway's decision not to testify. Rather, it is a direct response to defense counsel's remarks in closing concerning the absence of Patsy Admire at trial and attempting to shift blame to her. The state was then entitled to rebut the defense's theory that Patsy Admire, and not Hattaway, was guilty. In this context, the comments are not grounds for a mandatory mistrial under La.C.Cr.P. art. 770(3). This assignment does not constitute reversible error.

Assignments Nos. 19, 34
Hattaway combines these two assignments in brief. By assignment 19, he complains of the trial court's failing to grant his motion to suppress certain statements made to Deputy Corbello; however, because he failed to brief or argue this assigned error, it is deemed abandoned. State v. Schwartz; State v. Kotwitz, supra.
By assignment No. 34, he urges the court erred in failing to suppress the verbal statement he made to his cousin Deidre Barrett, and the written statements (2 handwritten letters) he made to Carla Whatley. He contends that these constituted "fruits of the poisonous tree" because they occurred after the Supreme Court had held that his confession of February 22, 1989 was illegally obtained and should have been suppressed. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
Ms. Whatley testified that Hattaway wrote the two letters postmarked March 13 and March 21, 1989. Although the letters were not dated, she was able to conclude based on the references they contained that they were written in March 1989. After reading them, she decided to turn them over to the police. According to Hattaway, who testified only for the limited purpose of the motion to suppress, he wrote the incriminating letters only after he had confessed to the crime; he stated he would not have written them otherwise.
*394 The trial court denied the motion to suppress. It found the letters admissible because the police did not solicit them from Hattaway; they only learned of the letters when Ms. Whatley came forward with them. Over Hattaway's objection, the letters were admitted.
Hattaway also contends that the court erred in failing to suppress his statement to Ms. Barrett. According to Ms. Barrett, Hattaway called her from jail on either March 22 or 23, 1989 to have her relay a message to his father. During the conversation, she asked him if he had committed the murder. Hattaway ultimately admitted to her that he had killed Slade as part of a robbery. Ms. Barrett testified that she was aware of his confession and would not have asked him about committing the murder had he not confessed. However, she also stated that no one encouraged her to ask Hattaway about the crime, and that she chose to do so on her own. She then told Deputy Corbello about the statement.
The trial court denied the motion to suppress this statement. In doing so, the court referred to the Supreme Court's finding in its opinion reversing Hattaway's conviction that the instant statement was not a "fruit of the poisonous tree." The trial court also found that because the statement was not made to the police, but to his cousin, it was not tainted because of the confession.
Hattaway mischaracterizes the admission of the evidence as erroneous under Wong Sun, "fruit of the poisonous tree," rather than in its correct light of the Sixth Amendment. Wong Sun contemplates suppression of statements or other evidence obtained by exploitation of an initial, illegal search, seizure or arrest. Hattaway's argument that the letters and verbal admission somehow flowed from the illegal confession is simply erroneous. Arguably, Hattaway could assert, however, that his Sixth Amendment right to counsel was violated because he made such statements while in custody. However, we find this argument to be meritless. None of Hattaway's confessions resulted from police-initiated interrogation. In fact, Hattaway's written and verbal statements were unsolicited, spontaneous admissions to friends or relatives; the police were never involved. State v. Perry, 502 So.2d 543 (La.1986). The record clearly shows that Ms. Barrett was not acting as a state agent. Maine v. Moulton, 474 U.S. 159, 106 S.Ct. 477, 487 (1985); State v. Perry, supra; State v. Loyd, 425 So.2d 710, 717 (1982). In sum, we find no reversible error.
We have reviewed the record and found nothing we consider to be error patent. For the reasons expressed, Hattaway's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
Before SEXTON, NORRIS, HIGHTOWER, BROWN and WILLIAMS, JJ.

ON REHEARING
PER CURIAM.
The applicant has asked this court to reconsider its analysis of the motion to suppress a verbal statement to his cousin, Deidre Barrett, and two written statements to Carla Whatley. For the reasons set forth in our original opinion, however, we find no merit in the argument that these statements flowed from the confession and should have been suppressed as fruit of the poisonous tree. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
We write this per curiam only to clarify language that appears in the discussion of that assignment of error at page 21. The statements complained of occurred after the February 22, 1989 confession which the Supreme Court subsequently determined to have been illegally obtained, and not after the Supreme Court rendered its opinion. State v. Hattaway, 91-0894 (La. 7/2/93), 621 So.2d 796. The application for rehearing is DENIED.
NOTES
[1] The Supreme Court reversed for violations of Hattaway's right to counsel under La. Const. art. 1, § 13. State v. Hattaway, 621 So.2d 796 (La. 1993). Recently, the Supreme Court overruled, in part, this decision. See State v. Carter, 94-2859 (La. 11/27/95), 664 So.2d 367.
[2] Assignments 26, 33, and 48, which were neither briefed nor argued, are deemed abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989), writ denied 558 So.2d 1123 (1990).
[3] Q: You corresponded with the defendant between the time of this crime in December of 1988 and today's date. You have written him letters?

A: Yes, ma'am.
Q: And he has written you letters?
A: Yes, ma'am.
Q: And when you would write him a letter, he would write you a letter back?
A: Yes, ma'am.
Q: And when you would write him a letter, when he wrote you back, would he answer questions you had asked him?
A: Yes, ma'am.
R.p. 1731.