BROWN, Chief Judge.
| ,On July 7, 2008, defendant, Donny Carper, was indicted by a Webster Parish Grand Jury on one count of aggravated rape of a juvenile under the age of 13, in violation of La. R.S. 14:42(A)(4), and one count of molestation of a juvenile under the age of 13, in violation of La. R.S. 14:81.2(E)(1). His first trial was held May 4-9, 2009, and on the aggravated rape count, defendant was found guilty as charged and sentenced to life imprisonment without the benefit of parole, probation, or suspension of sentence. On the molestation of a juvenile count, defendant was found guilty and sentenced to 25 years at hard labor without the benefit of parole, probation, or suspension of sentence. Defendant’s convictions and sentences, however, were reversed on appeal following this court’s determination that defendant’s constitutional right to confrontation was violated. State v. Carper, 45,178 (La.App.2d Cir.06/09/10), 41 So.3d 605, writ denied, 10-1507 (La.09/03/10), 44 So.3d 708.
Following a second jury trial held August 15-19, 2011, defendant was again convicted of aggravated rape of a juvenile under the age of 13 and, as to the molestation count, the jury returned a lesser responsive guilty verdict of indecent behavior with a juvenile under the age of 13. He was sentenced to life imprisonment without the benefit of parole, probation or suspension of sentence for the aggravated rape conviction and 25 years at hard labor with the first two years to be served without the benefit of parole, probation or suspension of sentence on the indecent behavior with a juvenile under the age of 13 conviction. For the following reasons, defendant’s aggravated rape conviction and sentence are affirmed. Defendant’s conviction for | gindecent behavior with a juvenile is likewise affirmed, except as to the portion of the conviction requiring enhancement under La. R.S. 14:81(H)(2). Therefore, his sentence for indecent behavior with a juvenile is vacated and the matter is remanded for resentencing under the correct statute.

Facts

Defendant was married and had three daughters. The two older daughters were the victims in this case. Defendant was charged by bill of indictment as follows:
On or between the dates of November 27, 2002[,] and November 12, 2007,

Count One

[Defendant] did commit aggravated rape of a juvenile (T.D. dob 11/27/97) victim being under the age of thirteen years of age, contrary to L.R.S. 14:42(A)(4); and On or between the dates of April 10, 2005[,] and November 12, 2007,

Count Two

[Defendant] did commit Molestation of a Juvenile ünder the age of thirteen (C.C. dob 4/10/00), by committing a lewd or lascivious act upon the person or in the presence of any child under the age of *122 seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, by use of force, violence, duress, menace, psychological intimidation, threat of great bodily harm, or by use of influence by virtue of a position of control or supervision over the juvenile, contrary to L.R.S. 14:81.2(E)(1) ...

Discussion

Sufficiency of the Evidence: Indecent Behavior with a Juvenile Under 13

Defendant contends that the evidence was insufficient to convict him of count two, indecent behavior with a juvenile. Specifically, defendant claims that the state failed to prove that he touched C.C. with the intent to |sarouse or gratify his or her sexual desires. Defendant has not assigned as error or briefed the issue of the sufficiency of the evidence as to the aggravated rape count.
When a defendant challenges both the sufficiency of evidence and one or more other trial errors, the appellate court should first resolve the sufficiency challenge. State v. Hearold, 603 So.2d 731 (La.1992); State v. Evans, 29,675 (La.App.2d Cir.09/24/97), 700 So.2d 1039, writ denied, 97-2942 (La.01/09/98), 705 So.2d 1121. The constitutional standard of review is “whether, after viewing the evidence in the light most favorable to the prosecution, any trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.” Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Cummings, 95-1377 (La.02/28/96), 668 So.2d 1132. This standard, initially enunciated in Jackson and now legislatively embodied in La. C. Cr. P. art. 821, is applicable in cases involving both direct and circumstantial evidence. State v. Smith, 441 So.2d 739 (La.1983); State v. Daniels, 614 So.2d 97 (La.App. 2d Cir.1993), writ denied, 619 So.2d 573 (La.1993). This standard does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/04/96), 680 So.2d 1165. The appellate court does not assess credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
Defendant was indicted:
On or between the dates of April 10, 2005[,] and November 12, 2007,
|4Count Two
[Defendant] did commit Molestation of a Juvenile under the age of thirteen (C.C. dob 4/10/00), by committing a lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person, ... by use of influence by virtue of a position of control or supervision over the juvenile, contrary to L.R.S. 14:81.2(E)(1) ... (Emphasis added).
Indecent behavior with a juvenile, La. R.S. 14:81, is a lesser and responsive verdict. The conspicuous difference between La. R.S. 14:81.2 and La. R.S. 14:81 is that the molestation statute, La. R.S. 14:81.2, requires something more than the mere exertion of physical effort necessary to commit the lewd act. The so-called “use of force” element in the molestation statute refers to the forcible means of overcoming the will or the resistance of a victim. See State v. LeBlanc, 506 So.2d 1197 (La.1987). This added element of force or intimidation must be greater or *123 substantially different from the effort necessary to commit the less serious offense of indecent behavior with a juvenile, La. R.S. 14:81.
When the evidence is sufficient to support a conviction of the greater offense charged, the reviewing court need not determine whether the evidence supports the responsive verdict returned by the jury. Stated otherwise, the jury may return any legislatively provided responsive verdict, whether or not the evidence supports that verdict, as long as the evidence was sufficient to support a conviction of the charged offense. State v. Peterson, 290 So.2d 307 (La.1974).
The Gingerbread House video recording was played in open court. The video recording first showed an interview with a Gingerbread House ^interviewer, Crystal Clark, and C.C. on May 8, 2008. During the interview, C.C., who was eight years old at the time of the interview, stated that she did not know why she was at the Gingerbread House. When asked if anyone had ever touched her “bottom” before, C.C. responded that her father had touched her there, under her clothes, when she was five. She explained that her older sister was at school at the time and that her younger sister was “still in her mother’s tummy.” She stated that her father had become upset with her earlier, and she was in the bedroom doing her homework when defendant came up to her and touched her on her bottom underneath her clothing and underwear. C.C. said that she was standing at the time, and that her father touched her butt with his hands with his palms facing up. When asked if her father said anything when he touched her bottom, C.C. stated that he warned her not to tell anyone. The interviewer asked C.C. if her father had “ever done that to somebody else”; C.C. responded that he had touched her sister’s bottom.
The state called,C.C. to testify. C.C. stated that she was 11 years old at the time of trial and that her birthday was April 10, 2000. C.C. verified that the things that she told the Gingerbread House interviewer were true and that the drawings she made showed where defendant touched her. C.C. testified that her father touched her on her bottom on other occasions as well.
C.C.’s sister, T.D., who was the victim in the aggravated rape count, affirmed C.C.’s testimony. T.D. went further and said that C.C. was raped by their father.
| fiCrystal Clark, the woman who conducted the Gingerbread House interviews of C.C. and T.D., testified. Ms. Clark explained that she was trained to conduct, in a non-leading way, the interviews of children who had been physically or sexually abused. A law enforcement officer works with the interviewer to formulate and ask pertinent questions. During the interview, the officer watches the interview on a television screen from a separate room.
Despite defense counsel’s objection, the video recording of T.D. and C.C.’s interview was again played in open court. Ms. Clark stated that T.D. and C.C. were consistent with their stories. Ms. Clark confirmed that neither T.D. nor C.C. knew why they were being interviewed. Ms. Clark explained that there are certain signs that indicate when children are being dishonest. She observed none of these in her interviews with the victims. Ms. Clark also explained that when children are descriptive about a subject, such as when T.D. explained what semen looked like, they are usually honest because a child cannot be taught to remember something like that at a specific time. Ms. Clark stated that often abused children will not relate every incident of abuse or remem *124 ber exact dates, but usually recall an incident that stands out in their mind.
On cross-examination, Ms. Clark stated that she did not find the fact that T.D. said that C.C. was raped to be inconsistent with information disclosed by C.C. in her interview. Ms. Clark opined that C.C. was not prepared to discuss anything other than what she did actually talk about.
17Based on this evidence, a rational fact finder could conclude that defendant, the father and disciplinarian of the children, committed upon C.C. the crime of molestation of a juvenile, and the jury’s responsive verdict of guilty of indecent behavior of a juvenile was sufficiently proven beyond a reasonable doubt.
Defendant contends that the facts adduced at trial were insufficient to prove that he committed the offense of indecent behavior with a juvenile under the age of 13. Specifically, he contends that the state failed to prove that the offense occurred after August 15, 2006, and, therefore, he should not have been convicted specifically of, and sentenced to the enhanced provision for, indecent behavior with a juvenile under the age of 18, in violation of La. R.S. 14:81(H)(2). In support of his argument, defendant points out that C.C. testified that he touched her buttocks when she was five years old. C.C. would have been five from April 10, 2005, to April 9, 2006, approximately four months prior to the 2006 amendment to La. R.S. 14:81.
La. R.S. 14:81, the statute criminalizing indecent behavior with juveniles, was amended in 2006 to add the following provision:
Whoever commits the crime of indecent behavior with juveniles on a victim under the age of thirteen when the offender is seventeen years of age or older, shall be punished by imprisonment at hard labor for not less than two nor more than twenty-five years. At least two years of the sentence imposed shall be served without benefit of parole, probation or suspension of sentence.
La. R.S. 14:81(H)(2).
La. R.S. 14:81 did not previously have an enhanced sentence for offenders committing the crime of indecent behavior with juveniles under | Rthe age of 13. Prior to the amendment in 2006, the sentencing range for all offenders was imprisonment of not more than seven years and/or a fine of not more than $5,000.
The statute defining molestation of a juvenile was also amended in 2006 to add a sentencing enhancement for the molestation of a juvenile under the age of 13. See La. R.S. 14:81.2(E)(1).
In the instant case, the jury was charged with determining whether defendant committed the offense of “molestation of a juvenile under the age of 13” or any responsive verdict thereof, including “indecent behavior with a juvenile under the age of 13.” The jury found defendant guilty of indecent behavior with a juvenile under the age of 13. The portion of the verdict which finds that the enhanced sentence set forth in La. R.S. 14:81 (for commission of the offense when the juvenile victim is under the age of 13) is unsupported by the facts adduced at trial. C.C. testified that her father touched her buttocks when she was five years old. Her testimony corroborated her earlier statements during her interview at the Gingerbread House that her father touched her when she was five. Although C.C. testified at trial that her father touched her buttocks on other occasions, she gave no details whatsoever as to when this conduct occurred. Furthermore, although T.D. testified that she saw defendant have sex with C.C., there were no details as to when this occurred. In returning a verdict of indecent behavior, the jury undoubtedly *125 relied on C.C.’s testimony that her father touched her butt when she was five years old. C.C. would have been five years old from April 10, 2005, until April 9, 2006, which was four months | ^before La. R.S. 14:81 was amended. Accordingly, there was insufficient evidence to prove applicability of the enhanced portion of the amended version of La. R.S. 14:81 (relating to the indecent behavior with a juvenile under the age of 13). Therefore, the trial court erred in sentencing defendant under the enhanced penalty to 25 years’ imprisonment, with the first two years to be without the benefit of parole, probation, or suspension of sentence. Accordingly, defendant’s conviction is amended to one for indecent behavior with a juvenile and his sentence for that conviction is vacated. We will remand this matter for resentenc-ing of the indecent behavior charge under La. R.S. 14:81(C) as it read in 2005. See State v. Simpkins, 44,197 (La.App.2d Cir.05/13/09), 12 So.3d 1021, writ denied, 09-1229 (La.02/05/10), 27 So.3d 296, writ denied, 09-1539 (La.03/05/10), 28 So.3d 1004.

Alleged Error in Bill of Indictment Re: Count Two

Defendant claims that the bill of indictment in this matter alleged a crime, molestation- of a juvenile under the age of 13, that did not exist during a portion of the time frame alleged in the indictment. Defendant complains because the bill of indictment also cited La. R.S. 14:81.2(E)(1), which was not added to La. R.S. 14:81.2 until August 15, 2006.
 The time for testing the sufficiency of an indictment or bill of information is before trial by way of a motion to quash or an application for a bill of particulars. State v. Campbell, 06-0286 (La.05/21/08), 983 So.2d 810, cert. denied, 555 U.S. 1040, 129 S.Ct. 607, 172 L.Ed.2d 471 (2008). A post-verdict attack on the sufficiency of an indictment should be rejected Imunless the indictment failed to give fair notice of the offense charged or failed to set forth any identifiable offense. Id.
Defendant did not file a motion to quash the indictment in this matter. However, even if he had done so, the motion would have been denied. The bill of indictment in this matter alleged that defendant molested C.C., a child under the age of 13, sometime between April 10, 2005, and November 12, 2007. Therefore, during a portion of the time period alleged by the state wherein defendant may have molested C.C., specifically after August 15, 2006, La. R.S. 14:81.2(E)(1) was applicable. Accordingly, the indictment presented defendant with adequate notice that he was being charged with molesting C.C. and further advised him that he was possibly subject, if the evidence proved as much at trial, to the enhanced penalty added to La. R.S. 14:81.2 in 2006 because C.C. was under the age of 13 at the time of the alleged molestation.
This assignment lacks merit.

Apprendi Violation

Defendant asserts that the trial court violated the mandates of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Defendant contends that in the instant case, the United States Supreme Court’s rule in Apprendi which requires that any fact which increases a penalty for a crime must be submitted to a jury and proved beyond a reasonable doubt, was violated when the state failed to submit the question of whether or not the offense was committed prior to, or after, the August 15, 2006, amendment to La. R.S. 14:81.2 in the jury instructions or I, .verdict form. Defendant concludes that *126 bis 25-year sentence is therefore excessive.
The jury in this matter was not instructed that it needed to determine whether the offense committed against C.C. occurred before or after August 15, 2006, the date when both the statutes for molestation of a juvenile and indecent behavior of a juvenile were amended to provide enhanced sentences for offenders committing those respective offenses against victims under the age of 13. Nonetheless, the trial court determined, based on the jury’s verdict, that the enhanced penalty for indecent behavior with juveniles applied. Arguably, an Apprendi violation occurred. However, given this court’s determination that defendant’s sentence should be vacated based on the fact that insufficient evidence existed to utilize the enhanced sentence for indecent behavior with a juvenile under the age of 13, the Apprendi violation is rendered moot.
This assignment lacks merit.

Ineffective Assistance of Counsel

Defendant contends that his trial attorney was ineffective for: failing to file a motion to quash the indictment; object to the jury charges and verdict sheets; object to the verdict for the crime of indecent behavior with a juvenile under the age of 13; and object to his excessive sentence for the indecent behavior with a juvenile conviction.
For the reasons set forth herein above, his attorney’s failure to file a motion to quash the bill of indictment did not constitute ineffective assistance of counsel because the motion would have been denied.
| i2As for defendant’s other claims of ineffective assistance of counsel — his trial counsel’s failure to object to the sufficiency of the jury charges, the verdict form, and the return of a verdict for indecent behavior with juveniles, the Apprendi violation and the excessiveness of his sentence— these claims are rendered moot by the fact that the portion of his conviction requiring him to be sentenced under La. R.S. 14:81(H)(2), and the sentence imposed in conjunction therewith, will be vacated.
Accordingly, this assignment lacks merit.

Testimony of Unavailable Witness

Defendant contends that the trial court erred in allowing the prior testimony of Laveta Frazier to be re-enacted during defendant’s second trial. According to defendant, the state failed to prove that the testimony was relevant and that the probative value of the testimony outweighed its prejudicial effect. Additionally, defendant argues that even if the testimony was relevant and not unduly prejudicial, the trial court erred in admitting the re-enacted testimony into evidence without first requiring the state to prove that the witness was unavailable at a later point in time. According to defendant, this error denied defendant his right to confront the witness and denied the jury the opportunity to view the witness’s demeanor while testifying.
La. C.E. art. 403 provides in part that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. A district court judge enjoys broad discretion in admitting or excluding evidence on relevancy grounds. State v. Dressner, 08-1366 (La.07/06/10), 45 So.3d 127, cert. denied, - U.S. -, 131 S.Ct. 1605, 179 L.Ed.2d 500 (2011); State v. Miles, 402 So.2d 644 (La.1981).
Determining the unavailability of a witness is a preliminary question for the trial court. La. C.E. art. 104(A). Such determinations are subject to manifest error review and will not be overturned absent an abuse of discretion by the trial *127 court. State v. Ball, 00-2277 (La.01/25/02), 824 So.2d 1089, cert. denied, 537 U.S. 864, 128 S.Ct. 260, 154 L.Ed.2d 107 (2002).
To protect a defendant’s constitutional right to confront and cross-examine adverse witnesses, certain conditions must be met before the prior testimony may be introduced: (1) defendant must have been represented by counsel at the earlier hearing; (2) the witness must have testified under oath; (3) the witness must have been cross-examined (or there must have been a valid waiver of the right to cross-examination); (4) at the time of trial, the witness must be “unavailable” to testify; and (5) the state must have made a good faith effort to locate the unavailable witness. State v. Ball, supra, citing State v. Hills, 379 So.2d 740 (La.1980).
The trial court held a hearing to determine whether the state could utilize the recorded trial testimony of Laveta Frazier. The state sought to use the recorded testimony due to the witness’s deliberate unavailability. The state called Angela Hall, the felony supervisor at the Webster Parish District Attorney’s Office, as its first witness. Ms. Hall stated that she was in charge of issuing subpoenas in defendant’s case and had attempted to have Ms. Frazier served so that she would be present for the trial. Ms. Hall |14explained that she spoke with Ms. Frazier on May 13, 2011, and Ms. Frazier stated that she heard that the trial had been continued. Ms. Hall confirmed the continuance and asked Ms. Frazier to verify her address and telephone number in Bossier City, Louisiana, which she did.
On May 16, 2011, Ms. Hall sent out a subpoena for Laveta Frazier at the Bossier City address to ensure her presence at trial on August 15, 2011. On May 23, 2011, the subpoena was returned, indicating that on May 18, 2011, the Bossier Parish Sheriffs Office attempted service on Ms. Frazier, but that she had moved and her current address was unknown. Ms. Hall also sent a subpoena via certified mail to a post office box, but the returned mail indicated that the occupant had “moved, left no address.” Service on Ms. Frazier was also attempted at a Springhill, Louisiana, address on May 26, 2011, but the Webster Parish Sheriffs Office could not complete service and the return was marked “moved.” On July 13, 2011, service was again attempted unsuccessfully at the Springhill address. Ms. Hall contacted the plant where Ms. Frazier had been employed, but the employer advised Ms. Hall that Laveta Frazier had not worked at the plant for some time. Ms. Hall also spoke with Ms. Frazier’s sister-in-law, but she failed to provide any new information regarding the potential witness’s whereabouts.
Bobby Morgan, an investigator for the Webster Parish District Attorney’s Office, also testified. Morgan stated that he was asked by Ms. Hall to try to locate Laveta Frazier using a “skip trace program,” something Morgan utilizes to secure addresses for prospective witnesses. Morgan explained that the program gave two possible addresses for Ms. Frazier, the |1Bpost office box address and the Spring-hill address. Morgan gave Ms. Hall the two addresses to attempt service on Ms. Frazier. Morgan testified that there were no other current addresses for Laveta Frazier. On cross-examination, Morgan stated that he did not try to locate Ms. Frazier by speaking with any of her family members.
The trial court determined that the state had made the appropriate efforts to locate Laveta Frazier. Further, Ms. Frazier’s previous testimony was given under oath and was subject to cross-examination. Therefore, the trial court ruled that Ms. Frazier’s previous trial testimony would be *128 read by a third party, his law clerk, at trial.
The trial court did not abuse its broad discretion by allowing Laveta Frazier’s testimony to be read to the jury during defendant’s second trial. Ms. Frazier previously testified that she watched C.C. and T.D. between the dates of 2001 and 2007, encompassing the period of time in which the state alleged that defendant raped T.D. and molested C.C. Ms. Frazier also testified that both the children were afraid of their father, were “jumpy,” especially when being bathed, were not doing well in school and “smelled like sex.” Her testimony was clearly relevant to whether the children had been sexually abused by defendant, and the trial court did not abuse its discretion by determining that the probative value outweighed the prejudicial effect of the testimony.
Additionally, defendant’s confrontation rights were not violated by admission of the testimony. As required under State v. Ball, supra, the state proved the following: (1) defendant was represented by counsel during the | )f,first trial when Laveta Frazier testified; (2) Ms. Frazier testified under oath at the first trial; (3) Ms. Frazier was cross-examined by defense counsel during the first trial; (4) at the time of trial, Ms. Frazier was unavailable; and (5) the state made a good faith effort to locate Ms. Frazier. Id.
Although defendant argues that the state was required to demonstrate that Laveta Frazier would not be available at a later point in time to testify, Louisiana law only requires the state to prove that Ms. Frazier was unavailable at the time of trial. The state, through the testimony of Angela Hall and Bobby Morgan, provided sufficient proof that the state made a good faith effort to locate Ms. Frazier and secure her presence for trial by issuing several subpoenas requiring her presence.
This assignment lacks merit.

Denial of Motion for Mistrial

Defendant asserts that the trial court erred when it failed to grant his motion for a mistrial based on a prospective juror’s statement during voir dire that he served as a jury member on this case two years ago. Defendant contends that although the comment was not a direct reference to another crime, nor was it made by the judge or court official, it would serve as a basis for a mistrial under La. C. Cr. P. art. 775(3) which provides for mistrial when “it is physically impossible to proceed with the trial in conformity with law.”
Defendant’s second trial commenced on August 15, 2011, with jury voir dire. On August 16, 2011, during the questioning of a prospective juror, Ramey Gryder, an issue arose when the district attorney asked Gryder |I7whether he knew either the defense attorney, Randal Fish, or defendant, Donny Carper. The following exchange took place:
Gryder: I served as a jury member on [t]his case two years ago.
D.A.: On?
Gryder: His case.
D.A.: Okay. Let’s — we will visit with you then in private. I think those are all the questions I have then. Thank you very much.
A hearing was then conducted outside the presence of the other prospective jurors during which additional questions were asked. Gryder clarified that he had served on defendant’s first trial a little more than two years previously. The state explained that it had understood Gryder to mean, when he answered the question during the voir dire, that he had served on a jury at a trial where Fish was the defense attorney. Gryder returned to *129 the jury pool after being instructed not to speak with the other prospective jurors about his prior jury service. The trial court then explained to both attorneys that it would excuse Gryder. Defense counsel then moved for a mistrial based on Gry-der’s statement that he had served as a member of the jury at defendant’s previous trial. After conducting some research, the trial court denied the motion for a mistrial. Citing State v. Hattaway, 28,060 (La.App.2d Cir.05/08/96), 674 So.2d 380, writ denied, 96-1900 (La.01/10/97), 685 So.2d 141, the trial court determined that Gryder’s statement did not prejudice the entire jury venire. Specifically, the trial court noted that Gryder did not mention that defendant had previously 11Rbeen convicted, but only that there had been a previous trial. Gryder was later released for cause.
Defendant claims that the trial court erred in relying on State v. Hattaway, supra, because the instant case is distinguishable. Defendant argues that Laveta Frazier’s re-enacted testimony from “an earlier proceeding,” along with the prospective juror’s comment, undoubtedly left the jury with the conclusion that defendant had been previously convicted.
La. C. Cr. P. art. 770 provides:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
[[Image here]]
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
When a remark is made that does not fall under La. C. Cr. P. art. 770, a mistrial is not mandated. Instead, the court must admonish the jury, if this is requested, and only grant a mistrial if, within the court’s discretion, the admonishment is not sufficient to assure a fair trial. La. C. Cr. P. art. 771. A trial court’s ruling denying a mistrial will not be set aside absent an abuse of discretion. State v. Narcisse, 426 So.2d 118 (La.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 202, 78 L.Ed.2d 176 (1983); State v. Williams, 45,755 (La.App.2d Cir.11/03/10), 54 So.3d 1129, writ denied, 10-2682 (La.04/25/11), 62 So.3d 85. A mistrial must also be ordered when prejudicial conduct in or outside the courtroom makes it impossible for defendant to obtain a fair trial. La. C. Cr. P. art. 775.
In State v. Hattaway, supra, a prospective juror mentioned in front of other prospective jurors that she had read in a newspaper that defendant’s case was “coming back for a retrial.” The prospective juror was excused. Defendant then requested a mistrial, which was denied. The defense was allowed to question the venire members about whether they had read the article, and all indicated they had not. The trial court then asked the prospective jurors if they had heard anything that had influenced their ability to sit on the jury and none stated that they had. Defendant raised the issue on appeal, and this court held that the trial court correctly denied the motion because the prospective juror “merely mentioned a retrial; she made no reference to the previous conviction or death sentence.” Further, this court noted that the trial court had confirmed that none of the prospective jurors stated that they had been influenced by anything they heard.
The trial court in the instant case did not abuse its discretion by denying defendant’s motion for a mistrial. This case is analogous to State v. Hattaway, supra. The prospective juror, Gryder, *130 when questioned whether he knew either the defense attorney or defendant stated, “I sat on [t]his trial two years ago.” The prosecutor immediately stopped questioning Gryder, and the matter was handled outside the presence of the other prospective jurors. Gryder’s statement is similar to the one made by the prospective juror in State v. Hattaway, supra, although probably more benign. In State v. Hattaway, supra, the prospective juror stated that she had read that defendant had been tried before. In the instant ease, Gryder’s statement was more equivocal; he never stated that he had sat on defendant’s previous 12fitrial. Additionally, the trial court in this matter, as did the judge in State v. Hattaway, questioned the venire to ensure that none of the prospective jurors had been influenced by anything they heard.
Furthermore, defendant’s argument that the re-enacted testimony of Laveta Frazier compounded the issue is unfounded. Prior to the reading of Ms. Frazier’s testimony, the trial court advised the jury that Ms. Frazier had “previously given a statement under oath.” No mention was made of a previous trial.
This assignment of error is without merit.

Introduction of Videotaped Interviews

Defendant contends that the trial court erred by allowing the videotapes from the Gingerbread House into evidence because the interviewer utilized leading questions in an effort to elicit a particular response in violation of La. R.S. 15:440.5(4). Defendant cites several of the questions utilized by the interviewer to get T.D. or C.C. to talk about “touches” or to elaborate on their answers. Defendant argues that the questions were designed to obtain specific responses.
According to the state, the videotapes were introduced in compliance with La. R.S. 15:440.1 et seq.
La. R.S. 15:440.1 provides:
It is declared to be in the best interest of the state that protected persons be spared from crimes of violence, and that persons who commit such crimes be prosecuted with a minimum of additional intrusion into the lives of such protected persons.
La. R.S. 15:440.2 provides in pertinent part:
|2iA. (1) A court with original criminal jurisdiction or juvenile jurisdiction may, on its own motion or on motion of the district attorney, a parish welfare unit or agency, or the Department of Social Services, require that a statement of a protected person who may have been a witness to or victim of a crime be recorded on videotape.
[[Image here]]
(3) Such videotape shall be available for introduction as evidence in a juvenile proceeding or adult criminal proceeding.
B. For purposes of this Part, “videotape” means the visual recording on a magnetic tape, film, videotape, compact disc, digital versatile disc, digital video disc, or by other electronic means together with the associated oral record.
C. For purposes of this Part “protected person” means any person who is a victim of a crime or a witness in a criminal proceeding and who is ... (1) Under the age of seventeen years.
La. R.S. 15:440.3 provides:
The videotape authorized by this Sub-part is hereby admissible in evidence as an exception to the hearsay rule.
La. R.S. 15:440.4 provides, in pertinent part:
*131 A. A videotape of a protected person may be offered in evidence either for or against a defendant. To render such a videotape competent evidence, it must be satisfactorily proved:
[[Image here]]
(3) That such recording was not made of answers to interrogatories calculated to lead the protected person to make any particular statement.
La. R.S. 15:440.5 provides, in pertinent part:
A. The videotape of an oral statement of the protected person made before the proceeding begins may be admissible into evidence if:
[[Image here]]
122(4) The statement was not made in response to questioning calculated to lead the protected person to make a particular statement ...
Both La. R.S. 15:440.4(A)(3) and La. R.S. 15:440.5(A)(4) clearly prohibit questions leading the protected person into making a particular statement. The Louisiana Supreme Court, however, has found that the rule forbidding leading questions may “yield somewhat to the trial court’s discretion in the examination of young victims.” State v. Abbott, 29,497 (La.App.2d Cir.06/18/97), 697 So.2d 636, writ denied, 97-1929 (La.01/09/98), 705 So.2d 1097, citing State v. Carthan, 377 So.2d 308 (La.1979).
This court, in State v. Watson, 39,362 (La.App.2d Cir.04/20/05), 900 So.2d 325, explained that some leading questions do not render such videotapes inadmissible under these statutes, relying upon State v. Feazell, 486 So.2d 327 (La.App. 3d Cir.1986), writ denied, 491 So.2d 20 (La.1986), wherein the appeals court considered the admissibility of a videotape of a child victim in which some leading questions had been asked under La. R.S. 15:440.4. In State v. Feazell, 486 So.2d at 330, the court observed:
Leading questions are ordinarily prohibited when propounded to one’s own witness unless such witness is unwilling or hostile. La. R.S. 15:277. However, it is well settled that an exception is usually made when questioning a young child. State v. Kelly, 456 So.2d 642 (La.App. 2d Cir.1984), writ denied, 461 So.2d 312 (La.1984); State v. Kahey, 436 So.2d 475 (La.1983); State v. Bolton, 408 So.2d 250 (La.1981); State v. Francis, 337 So.2d 487 (La.1976). Furthermore, notwithstanding the general rule against leading questions, the matter is largely within the discretion of the trial court and in the absence of palpable abuse of that discretion resulting in prejudice to the accused, a finding of reversible error is not warranted. State v. Kelly, supra; State v. Francis, supra.
| gjThe court in State v. Feazell, supra, found that the leading nature of the questions constituted harmless error especially since the defense viewed the videotape pri- or to trial and cross-examined the child during trial. Id.
The trial court did not err by allowing the videotapes to be played at defendant’s second trial. The tapes reveal that C.C. and T.D. were asked some leading questions, but mainly in order to get them to elaborate on their previous answers. C.C., who was only eight years old, appeared very shy during the interview. The interviewer, Crystal Clark, after undoubtedly realizing that C.C. was uncomfortable talking about her body, asked if “anyone” had ever touched her bottom. C.C. responded right away that her father had done so. The interviewer then asked a few somewhat leading questions to allow C.C. to give a detailed description of the encounter.
*132 T.D., who was ten years old at the time of the interview, was more outgoing, and explained, without encouragement, that her father had touched her thigh in a way that made her uncomfortable. When given the anatomical drawing and asked if anyone had ever touched her, T.D. explained that her father “touched her privacy with his privacy” and touched her “bottom with his privacy.” Ms. Clark asked somewhat leading questions only to elicit some particular details about the encounters, which T.D. thoroughly provided. The defense was also given an opportunity to cross-examine both C.C. and T.D. at trial.
Accordingly, this assignment lacks merit.
| ^Conclusion
For the foregoing reasons, defendant’s conviction and sentence for aggravated rape are affirmed. Defendant’s conviction for indecent behavior with a juvenile is affirmed; however, his sentence under the enhancement provision of La. R.S. 14:81(H)(2) is reversed. Thus, his sentence for indecent behavior with a juvenile is vacated and the matter is remanded for resentencing.
Affirmed in Part, Reversed in Part, Vacated and Remanded for Resentenc-ing.