STEPHEN J. WINDHORST, Judge.
12Pefendant, Carl Domangue, was charged with sexual battery, in violation of La. R.S. 14:43.1 (Count One), and molestation of a juvenile, in violation of La. R.S. 14:81.2 (Count Two). Defendant waived his right to a jury trial. A bench trial was held, after which the trial judge found defendant not guilty as to Count One, and guilty of the lesser included offense of indecent behavior with a juvenile as to Count Two. The trial court sentenced defendant to eight years imprisonment with the Department of Corrections; the first two years of defendant’s sentence to be served without benefit of parole, probation, or suspension of sentence. This appeal followed. For the reasons that follow, we affirm defendant’s conviction and sentence and remand with instructions.

FACTS

In December 2009, Amy Laiche, Assistant Principal at Paulina Elementary School, called J.L., the victim’s mother, to discuss R.L.’s (victim) absences from school.[1] At that time, J.L. informed Ms. Laiche that she thought R.L. was being fondled by the defendant. Ms. Laiche advised J.L. that she would speak with R.L. about the situation. Pursuant to her conversation with R.L., Ms. Laiche prepared a report documenting the alleged child abuse.
]sOn December 23, 2009, Detective Sonya Taylor, of the St. James Parish Sheriffs Department, was contacted by “OCS” in LaPlace regarding a report of alleged sexual abuse involving a juvenile and her “step-father” filed by Paulina Elementary School. Detective Taylor contacted J.L. and R.L. in reference to the report. On January 27, 2010, J.L. and R.L. met with Detective Taylor at the Sheriffs Office where R.L. was interviewed in private. R.L. told Detective Taylor that while her mother was at work, her “step-father” would use his finger to “play with her private area.” She stated that the defendant would place his finger underneath her clothing. R.L. further said that the defendant made her sit on his lap and he would throw her up and down. R.L. stated that on one occasion the defendant made her “put his penis back into his pants.” Detective Taylor determined that R.L. was between seven or eight years old at the time of the alleged abuse and the alleged perpetrator was 24 years old.
In April 2010, Lieutenant Pat Boudin, of the St. Charles Parish Sheriffs Office Child Advocacy Center, conducted a forensic interview with R.L. The video interview was introduced and played at trial. *693 In the interview, R.L. told Lt. Boudin that her “step father” used “his finger” to touch her “privates.”[2] She told Lt. Boudin that the defendant would put her on top of him on the bed and “bounce” her on him while “rubbing her privates up and down.” R.L. also stated that the defendant called his “private part, pokey” and he would make her sit on it. On one occasion, the defendant “took it out and made her put it back in.”
The victim, R.L., testified that she was born on January 8, 2000. R.L. testified that the defendant is the father of her younger sister. R.L.’s mother, J.L., worked the night shift and the defendant would babysit her and her younger sister when her mother was at work. R.L. testified that the defendant touched her |, “private part” and put her “on top of him and he called his private part, pokey.” R.L. testified that the defendant did this to her approximately five to ten times while her mother was at work. She described one incident when she was in bed with her sister and when her sister was turned away from her, the defendant began touching her. R.L. testified that these incidents by the defendant started in 2008 when she was eight or nine years old. She recalled that the first time the defendant touched her private part was when she had come home from school and had put on a movie for her sister to watch. The defendant told her to go the bedroom where he put her on top of him and moved back and forth. She testified that the defendant touched her on top and underneath her clothing, and that she was told to touch his private parts. R.L. further testified that the defendant told her not to tell her mother. She testified that she was scared but finally told her grandmother about the incidents.
R.L. testified that at one point, her mother questioned her about the inappropriate touching in front of defendant. The defendant and her mother got into an argument because defendant denied touching R.L. To stop the argument, R.L. told her mother that the defendant “might have just been playing.” She testified that she told her mother that because she was scared and did not want to hurt her mom. R.L. testified that sometime in 2009, the defendant and her mother got into a fight and the defendant moved out.
J.L., the victim’s mother, testified that she and the defendant lived together between 2008 and 2009. At that time, the defendant was approximately 24 years old. The defendant would watch R.L. and her other daughter while she was at work. J.L. questioned R.L. about being touched inappropriately by the defendant in the beginning of 2009. J.L. approached R.L. about whether she had ever been inappropriately touched by the defendant. R.L. told J.L. that the defendant touched |fiher vagina and showed her his “private part.” J.L. testified that she confronted defendant about the incident in front of R.L. J.L. conceded she should not have questioned the defendant while R.L. was present.[3] The defendant denied touching R.L. and a fight ensued. At that time, R.L. told J.L. that maybe the defendant was just playing. J.L. testified that after their argument she asked defendant to leave. She testified she did not report the incident to the police because she was in denial. J.L. further testified that R.L.’s grandmother called her and stated that she was informed by R.L. that she was scared to tell J.L. about the inappropriate *694 acts. J.L. testified that she eventually-informed R.L.’s school about the inappropriate touching after R.L. had missed a few days of school.
A.C., R.L.’s cousin, testified that she would occasionally babysit for R.L. In 2006 when she was 15 years old and babysitting R.L., A.C. testified that she went to sleep and when she woke up, defendant was on top of her. A.C. testified that the defendant put his penis inside of her and that she told him to stop but he would not stop. A.C. testified that she did not report this incident to the police, but in 2008 she told her boyfriend and J.L. about the incident with the defendant. A.C. admitted that the defendant was not the only person she ever accused of raping her.
Defendant testified at trial that he would occasionally watch R.L., but denied touching R.L. Defendant testified that R.L. only alleged these incidents occurred after she saw her mother, J.L., report him for domestic abuse.[4] Defendant further testified that after an argument with J.L. about whether he inappropriately touched R.L., R.L. recanted her allegations. Defendant further testified that he had | f,consensual sex with A.C. in 2007 or 2008, but he did not know how old A.C. was at the time.
V.L., R.L.’s grandmother, testified that R.L. informed her that the defendant was “fondling her in the bed while her mother was working.” R.L. told her that the defendant rubbed her private parts and pulled her on top of him. R.L. told V.L. that the defendant performed these acts several times. V.L. further testified that R.L. wrote some words down on a piece of paper regarding the incident while she was with V.L. because she was too ashamed and embarrassed to talk about it. V.L. testified that she contacted J.L. and told her that she needed to speak with R.L. V.L. testified that she did not contact the police because R.L. was crying and R.L. thought it was her fault.

DISCUSSION

In his sole assignment of error, the defendant claims that the evidence was insufficient to support his conviction of indecent behavior with a juvenile.
In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, viewed in the light most favorable to the prosecution was sufficient to convince any rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); See State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Bailey, 04-85 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 954-55, writ denied, 04-1605 (La.11/15/04), 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). The evidence must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Harrell, 01-841 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019. A reviewing court is required to consider the whole record and | vdetermine whether a rational trier of fact could have found the State proved the essential elements of the crime beyond a reasonable doubt. State v. Price, 00-1883 (La.App. 5 Cir. 7/30/01), 792 So.2d 180, 184.
*695 “Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude, according to reason and common experience, the existence of other connected facts.” State v. Kempton, 01-572 (La.App. 5 Cir. 12/12/01), 806 So.2d 718, 722. “The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” La. R.S. 15:438. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. The reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83.
After a bench trial, the trial judge found defendant not guilty on count one, sexual battery, and guilty of the lesser included offense of indecent behavior with a juvenile on count two.[5]
To convict a defendant of indecent behavior with a juvenile under La. R.S. 14:81, the State must prove that (1) there was an age difference of greater than two years between the accused and the victim, who was not yet seventeen; (2) the accused committed a lewd or lascivious act upon the person of, or in the presence | sof, a child; and (3) that the accused intended to arouse or gratify either his own or the victim’s sexual desires. State v. Battaglia, 03-692 (La.App. 5 Cir. 11/25/03), 861 So.2d 704, 708, writ denied, 04-1701 (La.4/29/05), 901 So.2d 1058. Specific intent need not be proven as a fact, but may be inferred from the circumstances and actions of the defendant. Battaglia, supra.
“A lewd or lascivious act is one which tends to excite lust and to deprave the morals with respect to sexual relations and which is obscene, indecent, and related to sexual impurity or incontinence carried on in a wanton manner.” State v. Stec, 99-633 (La.App. 5 Cir. 11/30/99), 749 So.2d 784, 787. Lewd and lascivious acts include not only the physical touching of the victim in an indecent manner, but also “indecent sexual displays in the presence of children under the age of seventeen.” State v. Interiano, 03-1760 (La.2/13/04), 868 So.2d 9, 15. Thus, it is not necessarily the act in and of itself that has to be lewd and lascivious. Id. The statute gives notice “that a person knowingly engaged in any overt sexual activity performed in the physical proximity of a child enters a zone of danger in which he runs the risk that a trier of fact may later find that activity criminal in nature.” Id. In determining whether an act is lewd or lascivious, the trier of fact must consider the time, the place, and all of the circumstances surrounding its commission, including the actual or implied intention of the actor. State v. Sturdivant, 27,680 (La.App. 2 Cir. 2/28/96), 669 So.2d 654, 659.
In the absence of internal contradiction or irreconcilable conflict with physi *696 cal evidence, one witness’ testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Turner, 05-75 (La.App. 5 Cir. 5/31/05), 904 So.2d 816, 823, writ denied, 05-2591 (La.5/26/06), 930 So.2d 20. The victim’s testimony alone can be sufficient to establish the elements of a sexual offense, even if the State does not introduce medical, scientific or | nphysical evidence to prove the commission of the offense. State v. Hotoph, 99-243 (La.App. 5 Cir. 11/10/99), 750 So.2d 1036, 1045, writs denied, 99-3477 (La.6/30/00), 765 So.2d 1062, and 00-0150 (La.6/30/00), 765 So.2d 1066.
In this case, the defendant only disputes that he touched R.L.’s genitalia or that he caused her to touch his private parts. Defendant claims that R.L. fabricated the story about being sexually abused to convince her mother to leave him.
R.L. testified that defendant touched her on her “private part,” which she described as her “bottom parts,” on five or more occasions while defendant babysat her when her mother was at work. R.L. testified that defendant would put her on top of him and he would call his “private part, pokey.” She explained in detail that defendant touched her both underneath and on top of her clothing, and that she was told by him to touch his private parts. R.L. also testified that on one occasion while her sister was watching a movie, defendant called her into the bedroom where he put her on top of him and moved back and forth. She further testified that on one occasion while she was sleeping in bed with her sister, the defendant touched her.
Defendant’s actions as described by R.L. constitute a lewd and lascivious act. See State v. Guillory, 07-422 (La.App. 3 Cir. 10/31/07), 970 So.2d 670. The requisite element of specific intent to arouse or gratify the sexual desires of either person may be inferred from the circumstances and the actions of the offender. See State v. Blanchard, 00-1147 (La.4/20/01), 786 So.2d 701. The defendant touched R.L.’s private parts, both outside and inside her clothing, and placed R.L. on top of him while he moved back and forth. A rational trier of fact could infer that defendant intended to arouse his sexual desire by committing these sexual acts.
Despite defendant’s assertions to the contrary, R.L. did not “recant” her claims of sexual abuse. R.L. testified that her mother and defendant were arguing 1 mabout the incidents in front of her. R.L. testified that she was scared and did not want to hurt her mom. She further testified that she told her mom that the defendant “might have just been playing” in order to stop the argument. R.L.’s testimony was also consistent with her account of events as relayed to R.L.’s grandmother, Detective Taylor, and as depicted on the video with the child advocacy representative, Lt. Boudin.
The trial court obviously accepted R.L.’s testimony and rejected the defendant’s testimony. There was no internal contradiction or irreconcilable conflict within R.L.’s testimony. Furthermore, all of the witnesses’ testimonies were consistent with each other and with R.L.’s testimony as to the defendant’s behavior. The trial court could have found that the State proved the essential elements of the crime of indecent behavior with a juvenile beyond a reasonable doubt. The evidence presented is sufficient to support the defendant’s conviction for indecent behavior with a juvenile. This assignment of error is without merit.

ERRORS PATENT

The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; *697 State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
Both the transcript and the commitment reveal that the trial court did not provide defendant with complete advice of the time limitation provided in La.C.Cr.P. art. 930.8, in that the court did not inform the defendant that he has two years from the date his conviction and sentence become final to file for post-conviction relief.[6]
|nIf a trial court fails to advise or provides incomplete notice pursuant to La. C.Cr.P. art. 930.8, this Court may correct said error by informing the defendant of the applicable delay period for post-conviction relief by means of its opinion. See State v. Jacobs, 07-887 (La.App. 5 Cir. 5/24/11), 67 So.3d 535, writ denied, 11-1753, (La.2/10/12), 80 So.3d 468; State v. Thomas, 10-221 (La.App. 5 Cir. 11/9/10), 54 So.3d 688, writs denied, 10-2758 (La.4/25/11), 62 So.3d 89 and 10-2752 (La.5/20/11), 6 So.3d 974;
Thus, the defendant is hereby informed that no application for post-conviction relief, including an application for an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence have become final under the provisions of C.Cr.P. art. 914 or C.Cr.P. art. 922.
Furthermore, the trial court failed to inform the defendant of the sex offender registration requirements in accordance with La. R.S. 15:540, et seq. Defendant’s eonviction of indecent behavior with a juvenile, a violation of La. R.S. 14:81, is defined as a sex offense under La. R.S. 15:541(14.1).[7] La. R.S. 15:542[8] outlines the mandatory registration requirements for sex offenders. La. R.S. 15:543(A) requires the trial court to notify a defendant charged with a sex offense in writing of the registration requirements of La. R.S. 15:542. The trial court’s failure to provide this notice is an error patent that requires remand. See State v. Bryant, 12-591 (La.App. 5 Cir. 2/21/13), 110 So.3d 1191, 1198-99; State v. Lande, 06-24 (La.App. 5 Cir. 6/28/06), 934 So.2d 280, 300-301, writ denied, 06 1894 (La.4/20/07), 954 So.2d 154, citing State v. Stevenson, 00-1296 (La.App. 5 Cir. 1/30/01), 778 So.2d 1165, 1166-1167.
Additionally, there is a more stringent notification process for child predators. The defendant fits the definition of a child predator pursuant to La. R.S. 15:541. La. R.S. 15:542.1 provides for a person defined as a sexual predator to be notified of the registration requirements for child predators. See State v. Thompkins, 04-1062 (La.App. 5 Cir. 2/15/05), 896 So.2d 1165, 1170-1172; State v. Polizzi, 05-478 (La.App. 5 Cir. 2/14/06), 924 So.2d 303, 316, writs denied, 06-1052 (La.11/3/06), 940 So.2d 660 and 08-2006 (La.1/30/09), 999 So.2d 751.
Thus, we remand this ease to the trial court with instructions to the trial judge to inform the defendant of the general sex offender and child predator registration provisions by sending appropriate written *698 notice to defendant, within ten days of this Court’s opinion, and to file written proof in the record that the defendant received such notice. See State v. Starr, 08-341 (La.App. 5 Cir. 11/25/08), 2 So.3d 451, 460-61, writ denied, 08-2991 (La.9/18/09), 17 So.3d 384; State v. Borden, 07-396 (La.App. 5 Cir. 5/27/08), 986 So.2d 158, writ denied, 08-1528 (La.3/4/09), 3 So.3d 470; State v. Morgan, 06-529 (La.App. 5 Cir. 12/12/06), 948 So.2d 199, 214.

CONCLUSION

For the reasons stated above, the defendant’s conviction and sentence are affirmed and the proceeding is remanded for the trial court to provide the defendant with the required notifications consistent with this opinion.
AFFIRMED AND REMANDED

. The victim's initials, as well as the initials of the victim's family members, are used under the authority of La. R.S. 46:1844(W)(3), which allows this Court to identify a crime victim who is a minor, or a victim of a sex offense, by using his or her initials.

. In the interview when asked what her ‘‘privates” was by Lt. Boudin, R.L. pointed to her vagina.

. J.L. testified that she confronted defendant about the incident with R.L. in May of 2009.

. Defendant was previously convicted of first degree robbery, forgery, unauthorized use of a motor vehicle, and domestic abuse battery. Defendant testified that J.L. was the victim of the domestic abuse battery conviction and that he was in jail for that offense from April 24, 2009 until July 1, 2009. Thus, defendant testified that he could not have had a fight with J.L. in May of 2009, as J.L. claimed, since he was incarcerated.

. Indecent behavior with a juvenile, La. R.S. 14:81, is a lesser included responsive verdict of molestation of a juvenile. The primary difference between La. R.S. 14:81.2 and La. R.S. 14:81 is that the molestation statute, La. R.S. 14:81.2, requires something more than the mere exertion of physical effort necessary to commit the lewd act. The so-called "use of force" element in the molestation statute refers to the forcible means of overcoming the will or the resistance of a victim. See State v. LeBlanc, 506 So.2d 1197 (La.1987). This added element of force or intimidation must be greater or substantially different from the effort necessary to commit the lesser offense of indecent behavior with a juvenile, La. R.S. 14:81. See State v. Carper, 47,409 (La.App. 2 Cir. 11/14/12), 107 So.3d 118.

. The transcript and commitment indicate that the trial court advised defendant as follows: "It is further ordered that you be given two (2) years to request any post-conviction relief, including any out of time appeals according to Article 930.8.”

. The law in effect at the time of the commission of the offense is determinative of the penalty that the convicted accused must suffer. State v. Johnson, 08-1156 (La.App. 5 Cir. 4/28/09), 9 So.3d 1084, 1094 n. 9, writ denied, 09-1394 (La.2/26/10), 28 So.3d 268 (citing State v. Sugasti, 01-3407 (La.6/21/02), 820 So.2d 518).

. A red flag appears when key citing this statute. However, the flag is inapplicable to this case.